**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2022 MSPB 7**

Docket No. AT-0714-19-0113-I-1

**Arnold Wilson,**

**Appellant,**

**v.**

**Department of Veterans Affairs,**

**Agency.**

April 26, 2022

Adam Jerome Conti, Atlanta, Georgia, for the appellant.

Kathleen Pohlid and Lois F. Prince, Nashville, Tennessee, for the agency.

**BEFORE**

Raymond A. Limon, Vice Chair
Tristan L. Leavitt, Member

## OPINION AND ORDER

¶1    The agency petitions for review and the appellant cross petitions for review of the initial decision, which reversed the appellant's reduction in grade taken under the authority of the Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017 (VA Accountability Act), Pub. L. No. 115-41, § 202(a), 131 Stat. 862, 869-73 (codified as amended at 38 U.S.C. § 714).  For the reasons set forth below, we DENY the agency's petition and GRANT the appellant's cross petition for review.  We AFFIRM the portion of the initial decision that found the appeal timely and determined the agency failed to prove its charge as expressly MODIFIED by this Opinion and Order to clarify the

administrative judge's analysis of the timeliness of the appeal and reverse the appellant's reduction in grade based on the reasoning in *Sayers v. Department of Veterans Affairs*, 954 F.3d 1370, 1372-73, 1380-82 (Fed. Cir. 2020). We REVERSE the portion of the initial decision that found the appellant did not prove his affirmative defense of whistleblower reprisal and we GRANT corrective action on that claim.

BACKGROUND

¶2    The appellant occupied a GS-11 Supervisory General Supply Specialist position, more informally known as an Assistant Chief position, in the Tennessee Valley Healthcare System (TVHS) Sterile Processing Service (SPS). Initial Appeal File (IAF), Tab 6 at 29, 34, 127. The SPS is responsible for "performing sterilization and high level disinfection" of all critical and semi-critical reusable medical equipment (RME) within the TVHS. *Id.* at 62-63.

¶3    As relevant here, the agency's National Program Office for Sterile Processing (NPOSP) performs inspections of SPS and related operations throughout the country, identifying areas of deficiency and providing specific recommendations as needed. IAF, Tab 28 at 18; Hearing Transcript (HT), Volume (Vol.) I at 9-10, 12 (testimony of an NPOSP Health Systems Specialist). It conducted site visits of the TVHS SPS on March 21-23, 2017, April 18-27, 2017, and July 24-28, 2017. IAF, Tab 6 at 61-73, Tab 28 at 17-54. At the conclusion of its July 24-28, 2017 site visit, the NPOSP found numerous errors and deficiencies in the cleaning, packaging, and storage of RME at the SPS. IAF, Tab 6 at 63-65, 67-72. The NPOSP also concluded the SPS lacked documentation reflecting that staff members had received necessary training and that their

supervisors had reviewed their ability to perform discrete tasks.[1]  *Id.* at 66-67.  It recommended that "SPS leadership . . . be immediately removed as evidence indicates there is a steady decline in the education, implementation, and oversight of regulatory standards and practices."  *Id.* at 72.

¶4        By letter dated September 19, 2017, the agency proposed the appellant's removal pursuant to the authority of 38 U.S.C. § 714 based on a charge of neglect of duty.  IAF, Tab 6 at 48.  In support of its charge, the agency cited deficiencies identified during the July 2017 site review as demonstrating that the appellant failed to exercise appropriate oversight of the SPS.  *Id.*  The underlying tasks at issue were performed by individuals managed by the appellant.  HT, Vol. II at 179 (testimony of the appellant), Vol. III at 93 (testimony of the appellant's former first-level supervisor); IAF, Tab 6 at 35, 48-49.  The specified problems included failing to follow up on quality assurance deficiencies, nonconforming RME processed by the SPS, and incomplete SPS training and competency documentation.  IAF, Tab 6 at 48-49.  On November 27, 2017, the agency's deciding official found the charge proven but reduced the penalty to a reduction in grade from the appellant's GS-11 Assistant Chief position in the SPS to a GS-9 Inventory Management Specialist position in the Logistics Service.  *Id.* at 34-36.  In its demotion decision, the agency advised the appellant that he could, among other options, appeal directly to the Board within 10 business days or seek equal employment opportunity (EEO) counseling with the agency within 45 days, followed by a formal EEO complaint.  *Id.* at 35-36.  The agency effected the action on December 10, 2017.  *Id.* at 29.

¶5        Within 4 days of receiving the agency's decision notice, the appellant amended a pending formal EEO complaint to include his demotion.  IAF, Tab 1

---

[1] The agency refers to the latter as a competency or competency assessment.  HT, Vol. I at 49-50, 52-54 (testimony of a NPOSP Health Systems Specialist); IAF, Tab 31 at 49-50.

at 4, Tab 6 at 13, 15-21, 36. After the agency failed to issue a final decision on that complaint, he filed the instant appeal of the action with the Board on November 14, 2018. IAF, Tab 1.

¶6    Following a hearing, the administrative judge issued an initial decision reversing the agency's action. IAF, Tab 57, Initial Decision (ID) at 2, 27. She first determined that the appeal was timely filed. ID at 2 n.2. In making this finding, she reasoned that, because the agency had provided the appellant with mixed-case appeal rights and he had filed a formal complaint of discrimination challenging his demotion, after the agency apparently failed to issue a final decision within 120 days, the appellant timely filed his Board appeal. ID at 1 n.1, 2 n.2; IAF, Tab 1 at 4, 6, Tab 6 at 18-19, 36.

¶7    The administrative judge concluded that the agency failed to prove its charge by substantial evidence, the standard of Board review for a disciplinary action taken pursuant to the VA Accountability Act. ID at 10-20; 38 U.S.C. § 714(d)(2)-(3). She reasoned that the agency did not show, among other things, that the appellant directed, knew, or should have known of his subordinates' misconduct. ID at 10, 13-16, 20. Because she concluded that the agency failed to prove its charge, the administrative judge determined it was unnecessary to reach the appellant's claims of harmful error and violation of law. ID at 20. She further found that the appellant failed to prove his affirmative defense of race discrimination, and that the agency proved it would have taken the same action absent the appellant's whistleblowing disclosures. ID at 22-27.

¶8    The agency petitions for review of the initial decision. Petition for Review (PFR) File, Tabs 3-4. The appellant cross petitions for review of the initial decision and responds to the agency's petition for review. PFR File, Tab 6. The agency responds to the cross petition for review and replies to the appellant's response to its petition for review. PFR File, Tabs 8-9.

¶9    Because the administrative judge found the appeal timely filed without affording the parties an opportunity to address the timeliness issue, ID at 2 n.2;

IAF, Tab 47 at 1, the Clerk of the Board informed the parties that the appeal appeared to be filed after the 10-business-day time limit at 38 U.S.C. § 714(c)(4)(B), and ordered the appellant to submit evidence and argument as to why the appeal should not be dismissed as untimely filed, PFR File, Tab 10. The appellant has responded that the appeal was timely filed as a mixed-case appeal under 5 U.S.C. § 7702 and its implementing regulations, a process that existed before, and was not expressly altered by, the enactment of the VA Accountability Act. PFR File, Tab 11 at 4, 6-8. He contends, alternatively, that the deadline should be waived or tolled because the agency's decision notice informed him that he could file an EEO complaint followed by a Board appeal.[2] *Id.* at 9. The agency has replied to the appellant's response, agreeing that the appeal was timely filed as a mixed case. PFR File, Tab 12 at 4.

## ANALYSIS

We clarify the basis for the administrative judge's conclusion that the appeal was timely filed.

¶10    In finding the appeal timely filed, the administrative judge reasoned that the agency essentially conceded that the appellant was entitled to file using mixed-case procedures, and that he timely did so. ID at 2 n.2. We agree with the administrative judge that the appeal is timely filed. However, because the parties cannot stipulate to a legal conclusion such as this one, we modify the initial decision to clarify the legal basis for finding the appeal was timely filed, as discussed below. *King v. Department of Veterans Affairs*, 105 M.S.P.R. 21, ¶ 16 n.2 (2007).

¶11    The agency took the instant action under the VA Accountability Act, which was enacted on June 23, 2017, and which authorizes the agency to "remove,

---

[2] We need not address this alternative argument because, as set forth below, we find that the appellant timely filed his appeal under 5 U.S.C. § 7702(e)(2).

demote, or suspend" "covered individual[s]."[3]   IAF, Tab 6 at 29, 34, 48; 38 U.S.C. § 714(a)(1).   Pursuant to that Act, an employee may appeal to the Board a removal, demotion, or suspension of greater than 14 days, but such appeal "may only be made . . . not later than 10 business days after the date of" the action.   38 U.S.C. § 714(c)(4).   Thus, pursuant to the plain language of the statute, because the agency effected the appellant's demotion on December 10, 2017, an appeal under section 714(c)(4) was due on or about December 22, 2017.  IAF, Tab 6 at 29, 34.  The appellant's November 14, 2018 appeal appears to be nearly 11 months untimely filed under the time limit set forth at section 714(c)(4)(B).

¶12        Section 714, however, is silent as to the procedures and filing times for a Board appeal in which, as here, an appellant seeks review of a matter within the Board's appellate jurisdiction and also raises a claim of discrimination or retaliation in violation of EEO statutes, known as a mixed case.  IAF, Tab 1 at 6, Tab 6 at 29, 129; *see Miranne v. Department of the Navy*, 121 M.S.P.R. 235, ¶ 8 (2014) (explaining that a mixed case arises when an appellant has been subject to an action that is appealable to the Board, and he alleges that the action was effected, in whole or in part, because of discrimination).  Congress extended title VII statutory protections to Federal employees with the Equal Employment Opportunity Act of 1972 (EEO Act), Pub. L. No. 92-261, § 717, 86 Stat. 103, 111-13 (codified as amended at 42 U.S.C. § 2000e-16).  The intent of the EEO Act was to eliminate discrimination from Federal employment.  H.R. Rep. No. 92-238, at 2141 (1971), *as reprinted in* 1972 U.S.C.C.A.N. 2137, 2158-60.

---

[3] A "covered individual" includes all individuals occupying positions at the agency, except for individuals who are in the Senior Executive Service, appointed under certain title 38 appointment authorities, still under a probationary or trial period, or political appointees.  38 U.S.C. § 714(h)(1).  The appellant occupies a position at the agency that does not fall under any of the exceptions to the above definition.  IAF, Tab 6 at 29, 127, 129.

¶13     The Board's processing of mixed cases subsequently was addressed in the Civil Service Reform Act of 1978 (CSRA), Pub. L. No. 95-454, title II, § 205, 92 Stat. 1111, 1140-43 (codified as amended at 5 U.S.C. § 7702) (1978). An appellant has two options when filing a mixed case:  (1) he may initially file a mixed-case EEO complaint with his employing agency followed by an appeal to the Board; or (2) he may file a mixed-case appeal with the Board and raise his discrimination claims in connection with that appeal.  *Miranne*, 121 M.S.P.R. 235, ¶ 8.  An employee may file either a mixed-case complaint or a mixed-case appeal, but not both, and whichever is filed first is deemed an election to proceed in that forum.  *Id.*  The CSRA provides, at 5 U.S.C. § 7702, as relevant here, that an employee may file an EEO complaint in a mixed case, which an agency "shall resolve . . . within 120 days."  5 U.S.C. § 7702(a)(2).  If the agency fails to issue a final decision within 120 days, the employee's right to file a Board appeal vests and he may appeal to the Board "at any time" thereafter.  5 U.S.C. § 7702(a)(2), (e)(2); *Miranne*, 121 M.S.P.R. 235, ¶ 9; *see* H.R. Conf. Rep. No. 95-1717, at 141 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 2860, 2874 (stating that a "final agency action must occur within 120 days after" an employee files an EEO complaint and that, "[a]fter these 120 days, the employee may appeal to the Board" if the employing agency has not yet issued a final decision).  The Board's regulations implementing the statute also reflect this rule, 5 C.F.R. §§ 1201.151(a)(1), .154(b)(2), as do the regulations of the Equal Employment Opportunity Commission (EEOC), 29 C.F.R. § 1614.302(d)(1)(i).

¶14     Under the CSRA, in mixed cases the Board "shall . . . decide both the issue of discrimination and the appealable action in accordance with the Board's appellate procedures under section 7701 of [title 5]."  5 U.S.C. § 7702(a)(1). A Senate Report by the Governmental Affairs Committee stated that "[a]ny provision denying the Board jurisdiction to decide certain adverse action appeals because discrimination is raised as an issue would make it impossible for the Government to have a single unified personnel policy which took into account the

requirements of all the various laws and goals governing Federal personnel management." S. Rep. No. 95-969, at 53 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 2723, 2775. Thus, under the CSRA, when an employee elects to file an EEO complaint first, he retains his right to later Board review of the agency's adverse action and the discrimination claim.

¶15    We turn now to the impact of the newly enacted 38 U.S.C. § 714 on the processing of mixed cases under the CSRA. This case is not the first time that a tribunal has confronted how a newly enacted statute affects related laws that it does not reference. For example, in *Morton v. Mancari*, 417 U.S. 535, 537-39, 545 (1974), the U.S. Supreme Court addressed the alleged inconsistency between a prior act providing an employment preference for qualifying Native Americans in the Bureau of Indian Affairs with the later enacted EEO Act requiring that Federal employment decisions be free from discrimination. The Court declined to find that the EEO Act repealed the preexisting statute by implication. *Morton*, 417 U.S. at 549-50. Rather, in the absence of an affirmative showing of an intent by Congress to repeal the prior statute, it read the statutes as permitting the employment preference for Native Americans to continue along with the "general rule prohibiting employment discrimination on the basis of race." *Id.* at 550. In so finding, the Court observed that repeals by implication are disfavored. *Id.* at 549-51. "When there are two acts upon the same subject, the rule is to give effect to both if possible." *Id.* at 551 (quoting *United States v. Borden Company*, 308 U.S. 188, 198 (1939)). An intention by Congress to repeal a statute "must be clear and manifest." *Id.* The Court concluded that, "when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Id.* at 551; *see Isabella v. Department of State*, 109 M.S.P.R. 453, ¶ 12 (2008) (same); *see also Von Zemenszky v. Department of Veterans Affairs*, 80 M.S.P.R. 663, 668-69, 673-74 (1999) (holding that, if Congress had intended to exempt Veterans Health Administration (VHA) health-care professionals appointed under

38 U.S.C. § 7401(1) from the preexisting reduction in force rules of the Veterans' Preference Act of 1944 when it created the VHA, it would have done so in explicit terms).

¶16 The Court recognized factors that might lead to a repeal by implication, although it found them inapplicable in *Morton*. 417 U.S. at 550-51. These included when the statutes at issue are "irreconcilable," or when the older statute is broader in scope than the newer, more specific statute. *Id.*; *see Todd v. Merit Systems Protection Board*, 55 F.3d 1574, 1577-78 (Fed. Cir. 1995) (stating that repeal by implication is appropriate only when statutes are irreconcilable or "the enactment so comprehensively covers the subject matter of the earlier statute that it must have been intended as a substitute;" a statute addressing a "narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum"); *Bergman v. Department of Transportation*, 101 M.S.P.R. 607, ¶ 6 (2006) (holding that specific statutory language aimed at a particular situation ordinarily controls over general statutory language). We find that neither situation is presented here.

¶17 While 38 U.S.C. § 714(c)(4)(B) includes a 10-business-day time limit for filing a Board appeal that is specific to covered employees of the agency, it is nevertheless silent regarding the procedures and time limits applicable when such employees file mixed-case complaints of discrimination followed by appeals to the Board. Those procedures and time limits are addressed in 5 U.S.C. § 7702. Thus, 38 U.S.C. § 714 does not reveal a clear and manifest intent to repeal the time limits and procedures of 5 U.S.C. § 7702. Moreover, 38 U.S.C. § 714 is not the more specific statute when it comes to the time limits and procedures for filing appeals that include discrimination claims; rather, the relevant provisions of 5 U.S.C. § 7702 are more specific. The above canon of statutory construction does not, therefore, indicate that the section 714 deadline controls in this case. *See Morton*, 417 U.S. at 550-51 (declining to find that a specific statute was implicitly repealed by one of more general application).

¶18    Our conclusion is supported by a recent order issued by the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Gates v. Department of Veterans Affairs*, No. 2020-2187, slip op. (Fed. Cir. Feb. 2, 2021), addressing a similar issue.   In *Gates*, the court confronted the issue of whether the VA Accountability Act expanded its jurisdiction to include review of Board decisions in mixed-case appeals arising under 38 U.S.C. § 714.  *Gates*, No. 2020-2187, slip op. at 3-4 (interpreting 38 U.S.C. § 714(d)(5)(A)).   Such cases previously fell within the province of the Federal district courts pursuant to 5 U.S.C. § 7703(b)(2).   *Gates*, slip op. at 3.   The court concluded that the VA Accountability Act did not give it authority over mixed cases.  *Id.* at 4.  The court reasoned, as relevant here, that if Congress intended such a significant change to the avenues of judicial review established by the CSRA, as codified at 5 U.S.C. § 7703, "it presumably would have made such intention clear from the face of the text" of the VA Accountability Act.   *Gates*, slip op. at 4.   We find the court's reasoning equally applicable here.[4]

¶19    We also find the statutes are reconcilable and capable of coexistence.  If an appealable action is taken pursuant to 38 U.S.C. § 714 against a "covered individual" who has not filed a formal complaint of discrimination with the agency, the 10-business-day time limit set forth at 38 U.S.C. § 714(c)(4)(B) would apply.[5]   If, however, such an individual has first filed a formal discrimination complaint with the agency from such an action, and the agency has not issued a decision within 120 days, then the time limit set forth at 5 U.S.C.

---

[4] The Board may rely on unpublished decisions of the Federal Circuit if it finds the court's reasoning persuasive, as we do here.  *Mauldin v. U.S. Postal Service*, 115 M.S.P.R. 513, ¶ 12 (2011).

[5] We do not address in this case which time limit would apply if a "covered individual" directly filed a Board appeal from an action taken pursuant to 38 U.S.C. § 714 and alleged before the Board that the action was based on discrimination. *Compare* 38 U.S.C. § 714(c)(4)(B) (setting forth a 10-business-day time limit), *with* 5 C.F.R. § 1201.154(a) (setting forth a 30-day time limit).

§ 7702(e)(2) applies to any subsequent Board appeal.  Thus, 38 U.S.C. § 714(c)(4)(B) and 5 U.S.C. § 7702(e)(2) are capable of coexistence.

¶20        Further, we decline to read 38 U.S.C. § 714 to stymie an employee's right to a hearing before the Board.  Doing so would be inconsistent with the intent of the EEO Act and the CSRA to eliminate discrimination in Federal employment and ensure the Board's jurisdiction over mixed cases.  The Board has held that, regardless of whether an employee elects to first file a mixed-case complaint with the agency or proceed directly to the Board, the employee's only right to an evidentiary hearing in such cases is before the Board, not the EEOC.  *Hess v. U.S. Postal Service*, 124 M.S.P.R. 40, ¶¶ 11, 18 (2016).  Pursuant to 5 U.S.C. §§ 7701(a)(1) and 7702(a)(1), an appellant is entitled to a hearing in any appeal brought before the Board under any law, rule, or regulation, and to have the Board decide the merits of any claim of statutorily prohibited discrimination raised in such an appeal.  *Sabio v. Department of Veterans Affairs*, 124 M.S.P.R. 161, ¶ 24 (2017); *see* S. Rep. No. 95-969, at 53, *as reprinted in* 1978 U.S.C.C.A.N. at 2775.  Thus, the Board cannot decide a cognizable discrimination claim without first holding an appellant's requested hearing.  *Hess v. U.S. Postal Service*, 123 M.S.P.R. 183, ¶¶ 1, 4, 9-10 (2016).

¶21        There is no indication that Congress intended, through enacting the filing deadline set forth at 38 U.S.C. § 714(c)(4)(B), to effectively eliminate the right to an evidentiary hearing for agency employees who choose to first file a formal complaint of discrimination with the agency before coming to the Board.  *See Wassenaar v. Office of Personnel Management*, 21 F.3d 1090, 1092 (Fed. Cir. 1994) (observing that "statutes must be construed in light of their purpose.  A reading of them which would lead to absurd results is to be avoided when they can be given a reasonable application consistent with their words and legislative purpose" (citations omitted)).  Rather, the VA Accountability Act reflects the continued importance of the right to a hearing before the Board.  Section 714(c)(4)(A) of title 38 requires to Board to "refer" an appeal filed under

the VA Accountability Act "to an administrative judge pursuant to section 7701(b)(1) of title 5." The assigned administrative judge must then "expedite any such appeal under section 7701(b)(1) of title 5." 38 U.S.C. § 714(d)(1). Thus, the procedures of 5 U.S.C. § 7701(b)(1), as "expedited," apply to the administrative judge's adjudication of an appeal filed under 38 U.S.C. § 714. Section 7701(b)(1) cross references, as one such procedure, an appellant's "right to a hearing for which a transcript will be kept." 5 U.S.C. § 7701(a)(1), (b)(1); *see Crispin v. Department of Commerce*, 732 F.2d 919, 922 (Fed. Cir. 1984) (interpreting 5 U.S.C. § 7701(a)(1) as preventing the Board from issuing summary judgment).

¶22        Although the legislative history of the VA Accountability Act does not specifically address the issue of the right to file a formal complaint of discrimination with the agency followed by a mixed-case appeal to the Board, there is some support for finding that section 714(c)(4)(A) was not intended to eliminate preexisting employee rights in general. For example, the legislative history reveals that Senator Tester said of the bill that later resulted in the VA Accountability Act that it "does not trample on workers' rights," but "keeps all the existing due process protections under current law." 163 Cong. Rec. S3261-01, S3268 (daily ed. June 6, 2017) (statement of Sen. Tester); *see also* 163 Cong. Rec. H4867-07, H4868 (daily ed. June 13, 2017) (statement of Rep. Buck that the legislation was needed "not because all the employees at the [agency] have problems," but rather because "there are bad apples," and that "[t]he bill also bolsters protection for whistleblowers"); 163 Cong. Rec. H4863-02, H4864 (daily ed. June 13, 2017) (statement of Rep. Roby that a prior law "didn't go far enough to protect whistleblowers" and "most [agency] employees care a great deal about veterans and work very hard to provide the best service"). Such an intent to retain the existing protections for employees is consistent with the more limited stated purpose of the VA Accountability Act, which is to "improve the accountability of employees of the Department of

Veterans Affairs," Pub. L. No. 115-41, 131 Stat. 862, not to change the established processes for filing mixed-case complaints and appeals.

¶23 The silence of the VA Accountability Act as to mixed-case complaints and appeals is in stark contrast to the language set forth therein pertaining to grievances. If an employee elects to grieve an action through a collective bargaining agreement, the "timeliness and procedures," including the 10-day time limit, under subsection (c) nonetheless "shall apply." 38 U.S.C. § 714(d)(10). There is, however, no comparable provision for employees who file a mixed-case complaint followed by a Board appeal, thereby suggesting that Congress did not intend to alter the time limits for mixed-case appeals set forth in 5 U.S.C. § 7702. *See Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶ 13 (2016) (under the maxim expressio unius est exclusio alterius ("the expression of one thing is the exclusion of the other"), it should not be assumed that other things that could have been listed in a statute were meant to be included; rather, the specific mention of certain things implies the exclusion of other things).

¶24 Our conclusion is further supported by the language of 5 U.S.C. § 7702. "Notwithstanding any other provision of law," such as the VA Accountability Act, in the case of an employee who has been affected by an action that the employee may appeal to the Board and who alleges that a basis for the action was certain prohibited discrimination, the Board "shall . . . decide both the issue of discrimination and the appealable action."[6] 5 U.S.C. § 7702(a)(1).

---

[6] The relevant statutory language provides more specifically that, "[n]otwithstanding any other provision of law, and except as provided in paragraph (2) of this subsection," the Board shall decide the issue of discrimination and the appealable action. 5 U.S.C. § 7702(a)(1). Section 7702(a)(2), in turn, provides that an affected employee may first bring those same matters before an agency, as occurred in this case, which shall resolve the matter within 120 days. The decision of the agency shall be judicially reviewable unless the employee appeals the matter to the Board under 5 U.S.C. § 7702(a)(1), which the appellant did in this case. Thus, because subsection 7702(a)(2) contemplates a possible Board appeal of an agency decision under subsection 7702(a)(1), we find that

This "notwithstanding" language of 5 U.S.C. § 7702 signals an intent to override conflicting provisions and to supersede other laws. *Taylor v. Department of the Army*, 107 M.S.P.R. 638, ¶ 6 (2008); *see also Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993) (noting that "notwithstanding" statutory language generally overrides "all other laws," and that "[a] clearer statement is difficult to imagine" (citations omitted)); *Coster v. United States*, 485 F.2d 649, 651-52 (Ct. Cl. 1973) (recognizing that "language such as 'notwithstanding the provisions of this or any other law' covers the waterfront regarding the operational scope of the statute"). Under 5 U.S.C. § 7702(e)(2), if, after the 120th day following the filing of a mixed-case complaint with an agency, there is no final agency decision, the employee may appeal the matter to the Board under section 7702(a)(1). *See* 5 U.S.C. § 7702(a)(2); 5 C.F.R. § 1201.154(b)(2).

¶25        Accordingly, we find that the appellant timely filed his appeal pursuant to 5 U.S.C. § 7702(e)(2), which was not foreclosed by the time limit set forth at 38 U.S.C. § 714(c)(4)(B). Having found that the applicable laws provide for this appeal to the Board following the filing of a mixed-case complaint, even when the action is taken under 38 U.S.C. § 714, we further find that election of remedy principles also apply under these circumstances. As previously indicated, when an appellant has been subjected to an action that is appealable to the Board and alleges that the action was effected in whole or in part because of discrimination on the basis of race, color, religion, sex, national origin, disability, or age, he may initially file a direct Board appeal or an EEO complaint with his agency, but not both, and whichever is filed first is deemed to be an election to proceed in that forum. *Dowell v. U.S. Postal Service*, 113 M.S.P.R. 250, ¶ 6 (2010); *see* 5 U.S.C. § 7702(a); *see also Lang v. Merit Systems Protection Board*, 219 F.3d 1345, 1347-48 (Fed. Cir. 2000) (concluding that a removed Federal employee timely

the "and except as provided in paragraph (2) of this subsection" language of 5 U.S.C. § 7702(a)(1) does not negate the "notwithstanding" clause of that subsection.

filed a mixed-case appeal with the Board after 120 days had passed without a final agency decision on his formal EEO complaint, even though he improperly received an EEOC hearing on the same complaint). The appellant timely filed his formal EEO complaint regarding his proposed removal on or about September 21, 2017, IAF, Tab 6 at 15-16, 18, timely amended the complaint to include his reduction in grade on November 30, 2017, *id.* at 18-19, and filed his Board appeal challenging that action on November 14, 2018, IAF, Tab 1 at 1. Thus, he elected to first proceed through the agency's EEO process before filing a Board appeal, and the procedures and time limits of 5 U.S.C. § 7702(e)(2), 5 C.F.R. § 1201.154(b)(2), and 29 C.F.R. § 1614.302(d), which we have found have been satisfied by the appellant, apply in this case.

The charge is not sustained and the action must be reversed.[7]

¶26        The agency raises a number of arguments disputing the administrative judge's finding that it did not prove its charge. PFR File, Tab 3 at 8-15. We do not reach these arguments here because we conclude that the agency improperly demoted the appellant under 38 U.S.C. § 714 for conduct predating the VA Accountability Act. *See Sheffield v. Office of Personnel Management*, 39 M.S.P.R. 507, 513-14 & n.6 (1989) (finding that because the Board was affirming an initial decision reversing an agency's action on an alternative basis, it did not need to address the arguments in the agency's petition for review); 5 C.F.R. § 1201.115(e) (providing that the Board reserves the authority to consider any issue in an appeal before it).

¶27        After the administrative judge issued the initial decision in the instant appeal, the Federal Circuit issued its opinion in *Sayers*, 954 F.3d 1370. In that case, the agency had removed Dr. Sayers from his Chief Pharmacist position

---

[7] The agency has provided evidence of compliance with the interim relief order set forth in the initial decision. PFR File, Tab 3 at 18-25; ID at 28-29. The appellant has not disputed this evidence.

under 38 U.S.C. § 714 for conduct that took place before the law's enactment. *Sayers*, 954 F.3d at 1372-73. Because Congress did not express any intent as to whether the VA Accountability Act applied to preenactment conduct, the court in *Sayers* examined whether the Act had an impermissible retroactive effect, i.e., whether it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed," (quoting *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994)), and concluded that it did. *Sayers*, 954 F.3d at 1380-82.

¶28        The court compared 38 U.S.C. § 714 to the existing authorities for taking adverse actions against tenured Federal employees under chapters 43 and 75 of title 5. *Sayers*, 954 F.3d at 1374-79. It determined that the VA Accountability Act introduced "an expedited, less rigorous alternative" to the two prior authorities, did not provide the type of procedural protections for employees as those required for chapter 43 performance-based actions, lowered the agency's burden of proof, and disallowed penalty mitigation for what would otherwise be chapter 75 actions based on conduct or performance.[8] *Id.* at 1374-76, 1378-79. The court held that the VA Accountability Act's lowered substantial evidence standard of proof and elimination of the Board's authority to mitigate the penalty detrimentally affected Dr. Sayers's property right to continued employment and "substantive rights to relief from improper removal." *Id.* at 1372 n.1, 1374, 1380-81. The court reasoned that Dr. Sayers "had a right to the substantive civil service protections from improper or unjustified removal in effect at the time of his alleged misconduct," and that those protections remained terms of his employment until Congress altered those terms when it passed the VA

---

[8] The VA Accountability Act provides that chapter 43 procedures do not apply to a removal, demotion, or suspension taken under 38 U.S.C. § 714. 38 U.S.C. § 714(c)(3); *Sayers*, 954 F.3d at 1379.

Accountability Act. *Id.* at 1381. Thus, the court vacated his removal. *Id.* at 1382.

¶29 Here, as in *Sayers*, the agency demoted the appellant under the VA Accountability Act for conduct by the appellant that predated its June 23, 2017 enactment. *See* Pub. L. No. 115-41, 131 Stat. 862. In removing the appellant for neglect of duty, the proposing and deciding officials relied on a "steady decline" in the SPS, ending with the July 2017 site visit by NPOSP. IAF, Tab 6 at 35, 48-49. The agency did not identify the period of this decline. *Id.* at 35, 48-49, 72. However, both below and on review it relied on testimony and evidence of deficiencies by the appellant's subordinates beginning as early as December 2016. PFR File, Tab 3 at 9-11 (citing, among other evidence, IAF, Tab 6 at 63-72, Tab 31 at 49-50, Tab 40 at 68-121, Tab 41 at 12, 48; HT, Vol. I at 54-56 (testimony of an NPOSP Health Systems Specialist), Vol. III at 192-93 (testimony of the deciding official)).

¶30 We have considered whether it is possible to sustain the agency's action solely based on any alleged post-June 23, 2017 neglect of duty by the appellant. In *Boss v. Department of Homeland Security*, 908 F.3d 1278, 1279, 1282-83 (Fed. Cir. 2018), the Federal Circuit held that a due process error that affects one charge does not necessarily require vacating the remaining charges. Rather, if the remaining, unrelated charges are untainted by the error, they may be reviewed on their merits. *Id.* at 1279, 1281-84. However, even assuming that we could similarly separate the specifications of the same charge using this reasoning, we find it inappropriate to do so here.

¶31 As discussed above, the agency's charge is based on the "steady decline" in the SPS based on errors of the appellant's subordinates over a period spanning at least 8 months. Only 1 of these months fell after the enactment of the VA Accountability Act. Therefore, we cannot find, as in *Boss*, that there is an "absence of evidence indicating that the procedural defect tainted the decision-making" process as to some portion of the charge. *Id.* at 1282-83.

Instead, the underlying alleged instances of misconduct by the appellant's subordinates "are so factually interrelated that they cannot be fairly separated." *Id.*

¶32    The Federal Circuit addressed a similar situation in *Brenner v. Department of Veterans Affairs*, 990 F.3d 1313 (Fed. Cir. 2021).  In its decision in that case, the court vacated the removal of an agency employee based on alleged poor performance beginning before, and continuing after, the June 23, 2017 enactment of the VA Accountability Act.  *Id.* at 1320-22, 1330.  The court reasoned that an action taken under VA Accountability Act may rely only on employee behavior occurring after its enactment.  *Id.* at 1328-29.  It was not persuaded by the agency's argument that consideration of prior poor performance was allowed because the removal "resulted from a pattern of poor performance that began before the Act was passed," and "became worse" thereafter.  *Id.* (quoting the agency's argument).   Rather, the court found that such consideration of preenactment events impermissibly "'attaches new legal consequences' to that conduct and thereby gives the Act impermissible retroactive effect," endangering an employee's "'property interest in [his] continued employment.'"   *Id.* at 1329-30 (quoting *Landgraf*, 511 U.S. at 270; *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1374 (Fed. Cir. 1999)).

¶33    Because applying 38 U.S.C. § 714 in this case would attach new legal consequences to events before its enactment, the statute may not be applied to those prior events.  *Sayers*, 954 F.3d at 1380.  Under these circumstances, and given our determination that the agency's charge and specifications do not distinguish between alleged misconduct that predates and postdates June 23, 2017, the agency's charge is not sustained and its action must be reversed.  *See Sayers*, 954 F.3d at 1380-82.

<u>The appellant is entitled to corrective action based on retaliation for whistleblowing.</u>

¶34    The administrative judge found that she did not need to address the appellant's claims of a violation of law and harmful error because there was no further relief she could grant him based on those allegations given her reversal of the action on the merits.[9]  ID at 20.  She further found that the appellant did not prove race discrimination.  She reasoned that the appellant relied on the agency's allegedly more favorable treatment of individuals who were not similarly situated to him.  ID at 22-23.  The appellant does not challenge this finding on review, and we decline to disturb it.  PFR File, Tab 6 at 17.

¶35    The appellant does, however, dispute the administrative judge's decision to deny corrective action for alleged whistleblower reprisal.  PFR File, Tab 6 at 4, 16-18.  When such a claim is made in the context of an otherwise appealable action, as here, the appellant must prove by preponderant evidence that he made a protected disclosure that was a contributing factor in the personnel action at issue.  *Shibuya v. Department of Agriculture*, [119 M.S.P.R. 537](#), ¶¶ 20, 22 (2013).  If the appellant makes this showing, the agency is given the opportunity to prove by clear and convincing evidence that it would have taken the same personnel action absent the protected disclosure.  *Id.*, ¶ 32.

¶36    The appellant alleged below that, beginning in 2015, he reported to the agency that the SPS had inadequate and defective equipment.  IAF, Tab 1 at 6, Tab 18 at 8, Tab 47 at 4-5.  The administrative judge found that the appellant made such reports, the reports were protected disclosures of a substantial and specific danger to public health or safety, and that they were a contributing factor in his demotion.  ID at 23-25.  The administrative judge went on to find, however,

---

[9] The appellant asserts that the Board should remand the case to the administrative judge to address these affirmative defenses if the Board finds that the agency proved its charge.  PFR File, Tab 6 at 16.  Because we agree with the administrative judge that the agency did not prove its charge, we need not address these affirmative defenses.

that the agency proved by clear and convincing evidence that it would have taken the same action in the absence of the disclosures. ID at 25-27. The appellant disputes this finding on review. PFR File, Tab 6 at 17-18. We agree with the appellant and grant corrective action for the reasons set forth below.

*The administrative judge properly determined that the appellant proved his protected disclosures were a contributing factor in his demotion.*

¶37      As an initial matter, the agency disputes the administrative judge's determination that the appellant's disclosures were protected and asserts that there was no evidence of actual harm to particular patients. PFR File, Tab 3 at 5, Tab 9 at 8-13. We are not persuaded.

¶38      Protected disclosures include "any disclosure of information" that the disclosing employee "reasonably believes evidences . . . a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8)(A)(ii). "[T]he inquiry into whether a disclosed danger is sufficiently substantial and specific to warrant protection under the [whistleblower reprisal statutes] is guided by several factors, among these: (1) the likelihood of harm resulting from the danger; (2) when the alleged harm may occur; and (3) the nature of the harm, i.e., the potential consequences." *Chambers v. Department of the Interior*, 602 F.3d 1370, 1376 (Fed. Cir. 2010) (internal citations and quotation marks omitted). In January 2017, the appellant reported to agency employees, including the deciding official, equipment breakdowns involving sterilizers that could delay the availability of RME required to provide immediate patient care. IAF, Tab 23 at 4-5; HT, Vol. III at 163-64, 166-70, 176 (testimony of the deciding official). The NPOSP's March 21-23, 2017 report specifically noted that "[d]owntime of SPS equipment" such as sterilizers "causes accumulation of non-reprocessed critical RME which can negatively impact patient access to care." IAF, Tab 7 at 42, 49. Delays in the processing of RME can lead to the cancellation of surgeries that "severely reduce the effectiveness of the entire organization." IAF, Tab 35 at 9. The record reflects, for example, that on January 11, 2017, one

"ENT case was delayed 3 hours due to inability to do a rapid turnaround of equipment with only one sterilizer working." IAF, Tab 23 at 8.

¶39 In addition, a December 13, 2017 Report of Investigation conducted by an Administrative Investigation Board investigating numerous aspects of SPS operations noted the following:

> Surgeons were concerned about the safety of continuing surgeries as it was unknown if the equipment would be available and/or sterile. In some cases, procedures were cancelled or a different surgical approach was utilized because of instrument concerns. For example, a Veteran's surgery was canceled because of suspected unsterile equipment and was postponed to the following week. There were three attempts to perform the Veteran's surgery.

IAF, Tab 27 at 4, 8. A total of 70 patients had to have their surgeries cancelled and rescheduled on March 30 and 31, 2017, due in part to an insufficient number of sterilized instruments. IAF, Tab 24 at 5-6, 8-9. Additional cases were cancelled between April 3 and 26, 2017, due to a lack of instrumentation. *Id.* at 11-12. At least one veteran complained to a news reporter about the cancellation of his surgery, which had yet to be rescheduled. *Id.* at 12. The agency's decision letter notes that the "reviewers found the status of TVHS SPS had the potential to place Veterans at risk." IAF, Tab 6 at 35.

¶40 These reports support the administrative judge's conclusion that the appellant reasonably believed he was disclosing evidence of a substantial and specific danger to public health or safety. ID at 23-24. As outlined above, the likelihood of harm was sufficiently high that the NPOSP, an expert body independent of the TVHS, warned of a negative impact on patient access to care that could severely reduce the effectiveness of the TVHS. The nature of, and potential for, the harm was also severe, as evidenced by the fact that surgeons at the TVHS cancelled medical procedures to avoid risking patient exposure to unsterile equipment. Contrary to the agency's assertions on review, the appellant was not required to provide evidence of actual harm to particular patients. PFR File, Tab 9 at 11-12; *Chavez v. Department of Veterans Affairs*,

120 M.S.P.R. 285, ¶¶ 19-20 (2013) (finding an appellant reasonably believed she disclosed a substantial and specific danger to public health or safety in that medical carts were not cleaned and restocked at shift change because harm could result directly from delays in providing immediate treatment or careful monitoring to patients who needed it).  Thus, we agree with the administrative judge that the appellant made protected disclosures.

¶41  Although the agency generally also asserts that the administrative judge erred in finding the appellant's disclosures were a contributing factor in his demotion, it provides no argument for its position.  PFR File, Tab 9 at 4.  We decline to disturb the administrative judge's finding, which is supported by the record.  ID at 25.  One of the ways to prove that a disclosure was a contributing factor in a personnel action is the knowledge/timing test, in which the appellant may demonstrate that the official taking the personnel action knew of the disclosure, and that the personnel action occurred within 1 to 2 years of the disclosure.  *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶¶ 18, 21 (2015).  The deciding official, who was the Health Safety Director for the TVHS, testified that beginning in late 2016, the appellant, among others, reported to her that the equipment in SPS was frequently breaking down.  HT, Vol. III at 163-64, 170, 172, 175-76 (testimony of the deciding official).  She made her decision to demote the appellant in November 2017.  IAF, Tab 6 at 34-36.  Thus, the disclosures were sufficiently close in time to the demotion for the appellant to prove contributing factor.

> *The administrative judge erred in her determination that the agency proved by clear and convincing evidence that it would have demoted the appellant absent his whistleblower disclosures.*

¶42  Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established.  5 C.F.R. § 1209.4(e).  It is a higher standard than a preponderance of the evidence, which is the degree of relevant evidence that a

reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. §§ 1201.4(q), 1209.4(e).

¶43   In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). "Congress considered it very important that [F]ederal agencies be required to clearly and convincingly rebut a *prima facie* case of whistleblower retaliation, especially given the evidentiary disadvantages" that whistleblowers face. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1367 (Fed. Cir. 2012) (emphasis in original). "Evidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion." *Id.* at 1368. However, the Board does not view the *Carr* factors as discrete elements, each of which the agency must prove by clear and convincing evidence. *Elder v. Department of the Air Force*, 124 M.S.P.R. 12, ¶ 42 (2016). Rather, the Board will weigh the factors together to determine if the evidence is clear and convincing as a whole. *Id.*

¶44   The administrative judge found that, although the evidence in support of the action was not strong, the existence and strength of any motive to retaliate was not great and weighed heavily in the agency's favor because the equipment issues raised by the appellant were widely known, individuals throughout the agency were involved in trying to resolve them, and the reduction-in-grade decision was largely motivated by the recommendation in the NPOSP site visit report that SPS

leadership be removed, not by the appellant's disclosure. ID at 26. She also held that evidence showing that the agency removed or reassigned other individuals in leadership positions who were not properly managing their departments weighed only slightly in the agency's favor because these individuals were not similarly situated to the appellant. ID at 22-23, 26.

¶45    The agency disagrees with the administrative judge's determination that its evidence in support of the appellant's demotion was "not strong," PFR File, Tab 9 at 13; ID at 26, while the appellant disagrees with her conclusion that the second factor weighed "heavily in the agency's favor," ID at 26; PFR File, Tab 6 at 17-18. We will address each of the *Carr* factors in turn.

¶46    As to the first *Carr* factor, the strength of the agency's evidence in support of its action, we have reversed the agency's charge based on its legal error of demoting the appellant under 38 U.S.C. § 714 for conduct predating the statute's enactment. However, our reversal on this basis does not shed light on whether the agency had legitimate reasons for the appellant's reduction in grade at the time it took the action, as necessary to assess *Carr* factor 1. *See Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1372-73 (Fed. Cir. 2001) (finding that the agency's explanation for its action should be judged based on the evidence before the agency at the time the action was taken). Therefore, in assessing *Carr* factor 1, we must determine whether the administrative judge erred in finding that the agency failed to prove by substantial evidence that the appellant neglected his duty. ID at 10-20, 26. We discern no error in that regard.

¶47    The administrative judge evaluated the neglect of duty charge under the same standard applicable to a charge of negligent performance of duties. ID at 10. The parties do not dispute the use of this standard, and we discern no error under the circumstances here. Culpable negligence in the performance of official duties is a failure to exercise the degree of care required under the particular circumstances, which a person of ordinary prudence in the same situation and with equal experience would not omit. *Velez v. Department of*

*Homeland Security*, [101 M.S.P.R. 650](#), ¶ 11 (2006), *aff'd per curiam*, 219 F. App'x 990 (Fed. Cir. 2007). When the actual duties at issue were carried out by an appellant's subordinates, as here, the agency must prove that the appellant "directed, knew, or should have known of the subordinate[s'] misconduct and acquiesced to the improper behavior." *Robinson v. Department of Veterans Affairs*, [923 F.3d 1004](#), 1011 (Fed. Cir. 2019).

¶48        The administrative judge found the agency did not prove that the appellant directed, knew, or should have known of his subordinates' lack of proper care, and that even if he did, such knowledge would not support a finding that he was negligent in performing his duties under the circumstances of this case. ID at 10-20. The administrative judge found that, beginning in the fall of 2016 and extending through July 2017, SPS was experiencing a "perfect storm" of significant problems with its sterilization equipment, which could not be replaced because SPS was operating in a space that was too small and needed to be renovated. ID at 12-13. In addition to the equipment issues, there were significant staff shortages and problems with the existing staff, including disciplinary and performance problems, all while the number of surgical cases was increasing. ID at 12, 16-20. Although these problems had been identified by the NPOSP as issues in its March and April 2017 site visits, they had not been remedied by July 2017. ID at 12.

¶49        Despite these issues, the administrative judge found that the appellant's supervisors testified that he had not neglected his duties, worked long hours, and was doing an outstanding job, which matched his performance rating, and that his immediate subordinates testified that he had never asked them to do anything improper or questionable and was not negligent in performing his duties. ID at 12, 14-20. The administrative judge further determined that the appellant was not aware, nor should he have been aware, as a second-level supervisor of technicians performing the sterilization work, that the deficiencies found in the July 2017 report were occurring, including the lack of second checks on

Operating Room (OR) instrument trays, problems with various types of RME processed by SPS, and a failure to document employee competencies and training. ID at 13-15, 20. She noted that it was unclear whether the high discrepancy rates in processed RME cited in the July 2017 site visit represented a pervasive problem or an anomaly because, among other things, evidence indicated that there would always be some discrepancies due to human error and an OR nurse had stopped compiling a monthly report detailing such discrepancies in April 2017. ID at 14.

¶50    The administrative judge further found that, even if the appellant had direct knowledge of the problems identified in the July 2017 NPOSP report, he was not negligent in performing his duties. ID at 16. Among other things, she found no testimony that he was anything but conscientious and hard-working, and he was dealing with systemic issues outside his control that higher-level TVHS managers were slow to resolve and that contributed to the NPOSP findings, such as the aforementioned record low staffing levels, difficulties recruiting new employees, and equipment failures, and insufficient space for SPS operations. ID at 16. Thus, the administrative judge concluded that the agency did not prove its charge. ID at 20.

¶51    The agency disagrees with the administrative judge's finding that the appellant did not know and should not have been aware of unresolved quality assurance deficiencies resulting in SPS producing nonconforming RME. PFR File, Tab 3 at 8-11. The agency points to the testimony of the OR nurse mentioned above, who completed monthly reports of deficient RME. PFR File, Tab 3 at 11. The reports in question reflect the OR nurse's compilation of discrepancies in RME processed by SPS and arriving in the TVHS OR from December 2016, through March 2017. IAF, Tab 40 at 50, 121-122, Tab 41 at 13, 49; HT, Vol. I at 136-37 (testimony of the OR nurse). The appellant received these reports monthly via email. IAF, Tab 40 at 48, 68-69, Tab 41 at 12, 48. The administrative judge concluded that because the OR nurse stopped compiling

the report at the beginning of April 2017, there is no evidence that the appellant was aware that RME deficiencies were continuing after that time. ID at 13-14; HT, Vol. I at 181 (testimony of the OR nurse). The agency argues on review that the reports "did not include all of the RME discrepancies identified by OR [employees]." PFR File, Tab 3 at 11; HT Vol. I at 154-57. We are not persuaded that the fact that other, unreported deficiencies existed between December 2016, and March 2017, supports the appellant's alleged knowledge of such deficiencies. Further, because the agency alleged a "steady decline" in the SPS, ending with the July 2017 site visit by NPOSP, any reported deficiencies in the RME provided to the OR through March 2017, rather than through July 2017, would have given the appellant an incomplete picture of the alleged decline. IAF, Tab 6 at 35, 48-49.

¶52　　The agency also argues that the administrative judge misread a document as supporting the appellant's claim that he was unaware, prior to July 2017, that SPS staff were not conducting a second round of quality assurance checks, as required, on RME that it prepared for the OR. PFR File, Tab 3 at 9-11; ID at 13; HT, Vol. I at 36-38 (testimony of an NPOSP Health Systems Specialist). We discern no error.

¶53　　The document at issue is an action plan prepared following the April 2017 NPOSP site visit. IAF, Tab 22 at 7; HT, Vol. II at 33 (testimony of the appellant). The plan states that, since February 15, 2017, "SPS Supervisors and Lead technicians provide a second check of OR instrumentation prior to packaging and sterilization." IAF, Tab 22 at 7. This information is also stated as a finding in the April 2017 site visit report. IAF, Tab 28 at 49. We discern no error in the administrative judge's determination that the agency's finding that second checks were being conducted as of April 2017, supports testimony, including the appellant's, that he was unaware second checks were not being

conducted as of the July 2017 site visit 3 months later.[10]  ID at 13; HT, Vol II at 182-83 (testimony of the appellant), 273, 275, 285 (testimony of an SPS supervisor), 303 (testimony of a Quality Assurance Specialist); *see Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (identifying factors, including the consistency of a witness's version of events with other evidence, that an administrative judge must consider in making credibility determinations).

¶54    The agency asserts that an SPS supervisor who reported directly to the appellant told the appellant's supervisor, the SPS Chief, that second checks were not being done.  PFR File, Tab 3 at 10.  It argues that the fact that the appellant was unaware that second checks were not being done evidences his neglect of duties.  *Id.*  Further, the agency contends that the appellant received "count sheets" between January and April 2017, showing that second checks were not being done because there were no double signatures from SPS staff.  *Id.* These arguments are without merit.  The SPS Chief's testimony cited by the agency does not suggest any neglect of duty by the appellant.  Rather, she testified that the SPS supervisor who told her about the second checks complained that the SPS supervisory staff "had to follow-up with corrective action" because the technicians were not conducting the second checks of equipment.  HT, Vol. III at 142 (testimony of appellant's first-level supervisor).  This indicates that the SPS supervisors, subordinate to the appellant, were appropriately correcting the work of their subordinate technicians when second checks were not completed.  Further, the count sheets identified by the agency, which appear to be entitled "Instrument Set" records, address discrepancies in the instruments included in the sets but do not identify an absence of SPS second counts as an issue.  *E.g.*, IAF, Tab 40 at 51-61, 66-67, 70-98.  In fact, the count sheets appear

---

[10] To the extent the administrative judge suggested the agency made this finding in March or June 2017, we modify the initial decision.  ID at 13.  The agency made the finding in April 2017.  IAF, Tab 22 at 7, Tab 28 at 49.

to have signature lines for an SPS technician, a preoperative scrub nurse, and a post-operative scrub nurse, but they do not contain a line or suggest the need for a second signature from another SPS employee. *E.g.*, *id.*

¶55 The agency also asserts that the administrative judge cited no evidence to support her finding that the appellant reported the issues in SPS to agency leadership. PFR File, Tab 3 at 11. It additionally claims that staff shortages and equipment failures did not excuse the appellant's neglect of duty because such staff shortages would only account for a delay in the delivery of RME, not quality assurance discrepancies. *Id.* at 11-13, 16. The agency points out that it permitted SPS to slow its processing to maintain quality assurance. *Id.* at 12-13.

¶56 In finding that the equipment and staffing issues affecting SPS were reported to agency leadership, the administrative judge relied upon the appellant's testimony, which was unrebutted. ID at 19; *see* HT, Vol. II at 16-17, 30-31, 95-96 (testimony of the appellant); *Williams v. Office of Personnel Management*, 105 M.S.P.R. 29, ¶ 11 (2007) (holding that testimony that is unrebutted and not inherently incredible may be sufficient to establish the accuracy of the allegations). Further, other evidence in the record supports the credibility of this testimony. *See Hillen*, 35 M.S.P.R. at 458. Specifically, the appellant identified the reports in the record that were provided to leadership, and the deciding official testified that she was aware of the equipment problems in SPS by April 2017. HT, Vol. II at 30-31 (testimony of the appellant) (citing IAF, Tab 20); HT, Vol. III at 175-76 (testimony of the deciding official).

¶57 Moreover, we disagree with the agency's suggestion that the administrative judge excused any neglect of duty by the appellant due to SPS staff shortages and equipment failures or misconstrued the charge. Although the administrative judge noted the staffing and equipment problems in describing the basis for and results of the NPOSP site visits, ID at 12-13, she ultimately found that the agency did not prove its charge because it did not prove by substantial evidence that the appellant was aware of, nor should he have been aware of, the problems identified

in the July 2017 NPOSP report, and did not, therefore, prove by substantial evidence that he neglected his duties, ID at 20.

¶58 The agency claims that the number of RME discrepancies decreased and the completion of competencies increased after the appellant's reduction in grade, that any compensatory hours he accumulated were related to courier tasks not within his job description, and that he was rarely seen wearing scrubs or at meetings to discuss discrepancies in RME processing. PFR File, Tab 3 at 12. Further, the agency asserts that the administrative judge did not support her finding that an agency witness who testified that competency validations were not properly completed was not credible. *Id.* at 13, 15-16. These arguments are unavailing because they do not address the central issue underlying the agency's charge, which is whether the appellant directed, knew about, or should have known about the improprieties in question. Moreover, the administrative judge expressly relied on witness demeanor in addressing the competency validations issue. ID at 15. Specifically, she found that the witness in question "appeared to have a grudge against the appellant." *Id.* The administrative judge instead credited that the "consistent" and "honest and forthright" testimony of two other witnesses that the appellant was not aware of any deficiencies in how competencies were being completed.[11] ID at 14-15. The Board must defer to an administrative judge's credibility determinations when, as here, they are based,

---

[11] The agency additionally argues the administrative judge abused her discretion in disallowing an additional witness that it requested "to confirm that employee competencies were not validated and that supervisors knew second checks [of RME processed by SPS] were not being done." PFR File, Tab 1 at 16. The administrative judge denied the agency's request for this witness prior to the hearing on the basis that her testimony was either duplicative or not relevant. IAF, Tab 46 at 5. We do not discern any basis to grant review. The administrative judge offered the parties the opportunity to object to this and other prehearing rulings. *Id.* at 6. Neither party did so. Because the agency did not object to this ruling below, it is precluded from doing so on petition for review. *See Tarpley v. U.S. Postal Service*, 37 M.S.P.R. 579, 581 (1988).

explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). The agency has not demonstrated such sufficiently sound reasons in this case.

¶59 The agency also argues that the appellant should have known of the insufficient training and competency assessments and quality assurance deficiencies identified in the July 2017 NPOSP report. PFR File, Tab 3 at 8-11. In finding otherwise, the administrative judge made credibility determinations, explicitly relying in some instances on the demeanor of witnesses during their testimony, and in other instances, impliedly doing so. ID at 13-20 & n.21. As set forth above, we must defer to these determinations. *Haebe*, 288 F.3d at 1301; *see also Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1372-73 (Fed. Cir. 2016) (concluding that the Board must defer to an administrative judge's credibility determinations even when she relies on demeanor "by necessary implication"). We find that the agency has not articulated sufficiently sound reasons for disregarding the administrative judge's credibility findings.

¶60 Further, in disputing the administrative judge's findings as to competency assessments and quality assurance, the agency makes a number of arguments that the administrative judge "ignored" or failed to discuss particular witness testimony and documents in her comprehensive initial decision. PFR File, Tab 3 at 9-13. A failure to mention all of the evidence, without more, will not afford a reason to disturb the decision below. *Kendricks v. Department of Veterans Affairs*, 79 M.S.P.R. 510, 518 (1998). Similarly, the agency points to certain evidence that it contends supports its position that the appellant should have known that competency assessments were not being performed properly. PFR File, Tab 3 at 8-9. In particular, the agency asserts that the appellant was the first-line supervisor of the SPS supervisors who signed the competency records,

he had an affirmative duty to ensure that the supervisors were doing the competencies properly, and "[a]lthough the paperwork reported that competencies had been done, in fact, they were not." *Id.* The agency also contends that the appellant admitted during his oral reply to the proposal notice that the SPS supervisors "did not individually validate competencies," thereby suggesting that they had been "pencil-whipped," or signed off on without verifying that the competencies were completed. *Id.* at 9; HT, Vol. III at 133-34 (testimony of the appellant's first-level supervisor).

¶61     These arguments do not, however, prove by substantial evidence that the appellant should have known of any problems regarding competencies. As the agency suggests, the paperwork in question shows on its face that the competencies were, for the most part, properly completed. *E.g.*, IAF, Tab 31 at 4-58. Thus, any review by the appellant of the paperwork itself would not have placed him on notice of a problem. Moreover, the agency's assertion that the appellant admitted during his oral reply that competencies were not individually validated is incorrect. The deciding official testified that the appellant told her during the oral reply that "the way they were documented doesn't mean that they didn't do them." HT, Vol. III at 192 (testimony of the deciding official). This statement is not an admission that the competencies were fabricated or that the appellant acted negligently. The agency's other arguments do not show that the appellant should have been aware of any problems with the completion of employee competency forms.[12]    PFR File, Tab 3 at 9; *see* ID at 14-15. After considering the agency's arguments, we discern no error in the

---

[12] Because we decline to disturb the administrative judge's finding that the agency failed to prove the appellant knew or should have known of these problems, we do not reach the agency's argument that the administrative judge erred in finding, in the alternative, that the appellant exercised reasonable care in performing his job duties in light of challenges such as a staffing shortage and sterilization equipment failures. PFR File, Tab 3 at 10-13; ID at 16-20.

administrative judge's conclusion that the agency did not have strong reasons for demoting the appellant.

¶62     Regarding the second *Carr* factor, we disagree with the administrative judge's determination that the existence and strength of any motive to retaliate was "not great" and weighed in the agency's favor.  ID at 26.  The appellant asserts that the administrative judge erred in finding that the deciding official simply followed the recommendation of the NPOSP site visit report to reduce him in grade and therefore had little motive to retaliate based on his disclosures.  PFR File, Tab 6 at 17-18.  The administrative judge correctly found that the deciding official relied heavily upon the NPOSP report in demoting the appellant from a leadership position in the SPS.  IAF, Tab 6 at 34-35; HT, Vol. III at 187-88, 199-200 (testimony of the deciding official).  Moreover, there is no indication in the record that the authors of that report were aware of the appellant's disclosures.  IAF, Tab 6 at 61-73; *see, e.g.*, HT, Vol. I at 86 (testimony of an NPOSP Health Systems Specialist), 192, 205, 213 (testimony of another NPOSP Health Systems Specialist).  Nonetheless, this factor does not favor the agency.

¶63     The deciding official testified that she became the Health System Director for the TVHS, the position she occupied at the time she made her decision to demote the appellant, in late 2016.  HT, Vol. III at 163 (testimony of the deciding official); IAF, Tab 6 at 36.  Prior to serving in that position, she stated that she was not aware of the extent of the equipment problems in the SPS.  *Id.* at 203 (testimony of the deciding official).  The appellant informed her when she first started in her position that the SPS needed a renovation and that equipment needed replacing.  *Id.* at 166-67 (testimony of the deciding official).  He later informed her that equipment started breaking "pretty frequently."  *Id.* at 168-69 (testimony of the deciding official).

¶64     The deciding official further testified that "any time" the appellant or his supervisor advised her that SPS equipment broke down, she "sent an information

brief" to higher-level management officials "to get funding for the renovation" SPS required to install new equipment. *Id.* at 169-70 (testimony of the deciding official). She also indicated that sometime after the NPOSP site visit in March 2017, she had to shut down the OR for 4 days, in part because of the equipment breakdowns in the SPS. *Id.* at 175-76, 205-06 (testimony of the deciding official). The deciding official advised her superiors of the shutdown, including that many patient operations had to be cancelled, how TVHS was handling those patients, and how long it would take to get back up to speed. *Id.* at 176 (testimony of the deciding official). The deciding official testified that there was adverse publicity in April 2017, regarding the shutdown in operations, including television news stories for which she was interviewed. *Id.* at 206 (testimony of the deciding official).

¶65      "Those responsible for the agency's performance overall," like the deciding official in this case, "may well be motivated to retaliate even if they are not directly implicated by the disclosures . . . as the criticism reflects on them in their capacities as managers and employees." *Whitmore*, 680 F.3d at 1370. An appellant's criticism that reflects on an agency official in her capacity as a manager and employee is sufficient to establish a substantial retaliatory motive. *Chavez*, 120 M.S.P.R. 285, ¶ 33. As set forth above, the deciding official was responsible for ensuring that the equipment problems were sufficiently documented to justify to her superiors the replacement of that equipment, and for responding to media inquiries regarding the resulting shutdown in operations. Thus, the appellant's disclosures generally put higher-level management officials, including the deciding official, in a critical light by disclosing problems with equipment that those officials were responsible for replacing.

¶66      Moreover, an agency's failure to investigate a charge sufficiently before bringing an action might indicate an improper motive. *Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶ 30 (2011). The administrative judge indicated that the deciding official "was largely motivated by" the July 2017 NPOSP report,

as opposed to the appellant's disclosures, in demoting him. ID at 26. In particular, she found the deciding official relied on the statement in the report recommending that SPS leadership be removed. ID at 26; IAF, Tab 6 at 72. However, NPOSP was not referring to the appellant in making that recommendation. HT, Vol. I at 123-24 (testimony of the National Director for Sterile Processing). Instead, NPOSP was recommending the removal of the appellant's first-line supervisor. *Id.* (testimony of the National Director for Sterile Processing). Thus, it appears that the agency failed to ask the critical question of who NPOSP recommended be removed. In sum, we find that the agency had a strong motive to retaliate because the appellant's disclosures reflected negatively on the deciding official as a manager and other higher-level management officials, and the agency did not sufficiently investigate which individuals NPOSP recommended removing from leadership positions before demoting the appellant. Thus, we find that the second *Carr* factor weighs in the appellant's favor given the evidence and considerations set forth above.

¶67    Finally, the administrative judge found that the third *Carr* factor weighed slightly in the agency's favor because the agency removed or reassigned other individuals in leadership positions who were not properly managing their departments. ID at 26. We disagree with the administrative judge's conclusion that this factor weighs in the agency's favor. Although not raised by the appellant on review, we observe that the record does not reflect, and the administrative judge did not determine, whether these individuals were nonwhistleblowers. ID at 26; HT, Vol. II at 234-38 (testimony of the appellant's second-level supervisor); HT, Vol. III at 132-33 (testimony of the appellant's first-level supervisor), 194-97 (testimony of the deciding official); IAF, Tab 48 at 4-5. Only evidence reflecting the agency's treatment of similarly situated nonwhistleblower employees is relevant to *Carr* factor 3. *Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018). The risk associated with producing no evidence for a particular *Carr* factor falls on the Government.

*Id.* Because the agency did not submit evidence that nonwhistleblowers who were similarly situated to the appellant were treated the same, this factor "cannot favor" the agency. *Id.*

¶68 After weighing the relevant factors and considering the record as a whole, we find that the agency has not met its burden given the weakness of its evidence when it acted, the existence of evidence of a strong motive to retaliate, and the absence of evidence regarding its treatment of nonwhistleblowers. *See Chambers*, 116 M.S.P.R. 17, ¶ 71 (finding an agency did not meet its burden after reaching the same conclusions regarding the *Carr* factors); *Brewer v. Department of the Interior*, 76 M.S.P.R. 363, 371 (1997) (finding an agency did not meet its burden when the evidence in support of its action was not strong, the rating and reviewing officials were essentially the subjects of the appellant's disclosure, and the agency presented no evidence that it treated similarly situated nonwhistleblowers the same as the appellant).

¶69 Accordingly, we affirm the initial decision, in part, as modified by this Opinion and Order, still reversing the appellant's reduction in grade. Further, we reverse the initial decision in part, granting the appellant's request for corrective action.

¶70 This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113 (5 C.F.R. § 1201.113).

## ORDER

¶71 We ORDER the agency to reverse the appellant's reduction in grade and to restore the appellant effective December 10, 2017. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶72 We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel

Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶73    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and to describe the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶74    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision in this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶75    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT**
**REGARDING YOUR RIGHT TO REQUEST**
**ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at Title 5 of the United States Code (U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1202.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

**NOTICE TO THE APPELLANT REGARDING**
**YOUR RIGHT TO REQUEST CONSEQUENTIAL AND/OR**
**COMPENSATORY DAMAGES**

You may be entitled to be paid by the agency for your consequential damages, including medical costs incurred, travel expenses, and any other reasonable and foreseeable consequential damages.  To be paid, you must meet the requirements set out at 5 U.S.C. §§ 1214(g) or 1221(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202 and 1201.204.

In addition, the Whistleblower Protection Enhancement Act of 2012 authorized the award of compensatory damages including interest, reasonable expert witness fees, and costs, 5 U.S.C. §§ 1214(g)(2), which you may be entitled to receive.

If you believe you are entitled to these damages, you must file a motion for consequential damages and/or compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your motion with the office that issued the initial decision on your appeal.

## NOTICE TO THE PARTIES

A copy of the decision will be referred to the Special Counsel "to investigate and take appropriate action under [5 U.S.C.] section 1215," based on the determination that "there is reason to believe that a current employee may have committed a prohibited personnel practice" under 5 U.S.C. § 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D). 5 U.S.C. § 1221(f)(3). Please note that while any Special Counsel investigation related to this decision is pending, "no disciplinary action shall be taken against any employee for any alleged prohibited activity under investigation or for any related activity without the approval of the Special Counsel." 5 U.S.C. § 1214(f).

## NOTICE OF APPEAL RIGHTS[13]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions

---

[13] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain

judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[14]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[14] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

/s/
_____
Jennifer Everling
Acting Clerk of the Board
Washington, D.C.



# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion. Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE: If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.