# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

KATRINA REID,
              Appellant,

      v.

DEPARTMENT OF AGRICULTURE,
              Agency.

DOCKET NUMBER
DC-1221-21-0478-W-1

DATE: October 7, 2022

# THIS ORDER IS NONPRECEDENTIAL[1]

Katrina Reid, Suitland, Maryland, pro se.

Amar Nair, Esquire, and David A. Organes, Washington, D.C., for the
    agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

## REMAND ORDER

The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review, AFFIRM IN PART and VACATE IN PART the initial

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

decision, and REMAND the appeal to the Washington Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2      The appellant was previously employed as a GS-13 International Trade Specialist in the Plant Division of the agency's Office of Trade Policy and Geographic Affairs (TPGA).   Initial Appeal File (IAF), Tab 21 at 73. On June 22, 2020, the agency proposed her removal based on a charge of improper conduct, alleging that she made harassing and inappropriate statements that caused her coworkers and supervisor to be concerned for their personal safety and caused disruption in the workplace in violation of an agency regulation prohibiting workplace violence.   IAF, Tab 1 at 7-12.   On August 14, 2020, the agency   sustained   the   charge   and   removed   the   appellant,   effective immediately.   *Id.* at 13-18.   That decision informed the appellant that she could challenge the removal decision by:   (1) appealing directly to the Board; (2) filing a discrimination complaint through the agency's equal employment opportunity (EEO) office, followed by a mixed-case appeal with the Board; or (3) filing a whistleblower reprisal complaint with the Office of Special Counsel (OSC), followed by an IRA appeal with the Board.   *Id.* at 16-18.   As to the first two options, the agency advised her that whichever she filed first would be deemed an election to proceed in that forum.   *Id.* at 17.

¶3      After contacting an agency EEO counselor on August 25, 2020, the appellant filed a formal EEO complaint on December 7, 2020.  IAF, Tab 19 at 4, Tab 21 at 48.   In her formal complaint, the appellant alleged that she was subjected to discrimination and harassment based on her race, color, age, sex, and in reprisal for prior EEO activity when the agency removed her, among other things.   IAF, Tab 1 at 4, Tab 21 at 48.   The agency accepted her formal complaint for investigation on January 22, 2021.   IAF, Tab 19 at 4-5.   On February 13, 2021, the appellant filed a complaint with OSC alleging that the

agency retaliated against her for her protected disclosures or activities by taking a number of actions, including removing her. IAF, Tab 1 at 4, 20, Tab 7. On April 12, 2021, OSC issued a letter notifying the appellant that it was terminating its investigation into her complaint and informing her that she could seek corrective action by filing an IRA appeal with the Board. IAF, Tab 1 at 20.

¶4 The agency issued a Final Agency Decision (FAD) on the appellant's EEO complaint on May 19, 2021, concluding that "[t]he weight of the evidence indicates neither discrimination, nor harassment occurred." IAF, Tab 21 at 47, 68, 71. In its FAD, the agency advised her that she could file an appeal with the Board within 30 days. *Id.* at 68-71.

¶5 On June 16, 2021, the appellant filed a Board appeal challenging her removal. IAF, Tab 1 at 1-6. She did not request a hearing. *Id.* at 2. The administrative judge issued an acknowledgment order that identified the appeal as an IRA appeal. IAF, Tab 3. She also issued a separate jurisdictional order dated June 21, 2021, setting forth the appellant's burden of proving jurisdiction over her IRA appeal and directing her to file evidence and argument on the issue, providing a list of seven specific items relevant to the Board's jurisdictional determination. IAF, Tab 4 at 2-8. Both the appellant and the agency submitted responses to the jurisdictional order. IAF, Tabs 7-22. The appellant also filed a motion requesting that the administrative judge compel the agency to respond to her discovery requests, the agency opposed the appellant's motion, and the appellant responded. IAF, Tabs 23-25.

¶6 After the record on jurisdiction closed, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction. IAF, Tab 26, Initial Decision (ID) at 1, 19. The administrative judge determined that the appellant had demonstrated that she exhausted with OSC her claims that the agency subjected her to several personnel actions, including removal. ID at 10-11. Regarding potential protected disclosures or activities, the administrative judge determined that the only potential disclosure identified in

OSC's close-out letter was the appellant's claim that she expressed disagreement with her supervisor's decision to deny her requested training in a June 2019 email and that she escalated her disagreement to agency upper management. ID at 11-13. The administrative judge noted that the appellant had not provided a copy of this email in her pleadings. ID at 13. She concluded that it appeared the email merely took issue with the agency's denial of the appellant's training request and did not appear to disclose evidence of any of the categories of wrongdoing listed in 5 U.S.C. § 2302(b)(8). *Id.* Consequently, she found that the appellant failed to nonfrivolously allege that she made a protected disclosure. *Id.*

¶7      Regarding the appellant's prior EEO complaints, the administrative judge observed that it did not appear that the appellant had exhausted this activity with OSC, and regardless, the Board lacks IRA jurisdiction over allegations of retaliation for EEO activity. ID at 13-14. Finally, the administrative judge determined that even if the appellant had engaged in protected activity within the Board's IRA jurisdiction when she submitted a witness affidavit on September 17, 2018, in connection with a coworker's EEO complaint, she nevertheless failed to establish that such activity was a contributing factor in the agency's decision to take any of the contested personnel actions. ID at 16-18. Consequently, she concluded that the appellant failed to establish jurisdiction and dismissed the appeal.[2] ID at 19.

¶8      The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 2. The agency has filed a response in opposition to the appellant's petition for review, and the appellant filed a reply. PFR File, Tabs 4-5. The agency also has filed a motion to strike the appellant's reply arguing that it raised new allegations that were not raised in the petition for review pleading, and

---

[2] Because she concluded that the appellant failed to establish jurisdiction over her appeal, she concluded that the appellant's motion to compel discovery was moot. ID at 18 n.5.

the appellant has filed a response opposing the agency's motion.  PFR File, Tabs 6-7.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The administrative judge erred by concluding that the Board lacks jurisdiction over the appellant's IRA appeal.</u>

¶9    The appellant argues on review that the agency should not have taken a number of personnel actions against her, including the removal, and that she established that she made several protected disclosures and engaged in protected activities from 2013 through her removal in 2020.  PFR File, Tab 2 at 7-12.  She also argues that she was disciplined more severely than other similarly situated agency employees and that the agency committed harmful error in connection with her removal.  *Id.* at 14-28.  Additionally, she alleges that the agency discriminated against her in connection with her removal.  *Id.* at 29-31.

¶10    To establish Board jurisdiction over an IRA appeal, an appellant must exhaust her administrative remedies with OSC and nonfrivolously allege that: (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take, or threaten to take or fail to take, a personnel action as defined under 5 U.S.C. § 2302(a).  *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016); *see* 5 U.S.C. §§ 1214(a)(3), 1221(e)(1).  A protected disclosure is a disclosure of information that an appellant reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  *Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 12 (2014).  A reasonable belief exists if a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the actions of the Government evidence one of the categories of wrongdoing listed in section

2302(b)(8)(A). *Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 11 (2016).

¶11    Based on the provided OSC complaint, the administrative judge determined that the appellant alleged to OSC that: (1) she was suspended for 7 days in April 2018; (2) she was suspended for 14 days in October 2019; (3) she received lowered performance ratings in 2018 and 2019; (4) she was denied a within-grade increase (WIGI) in January 2020; (5) she was denied a training opportunity in August 2020; (6) she was obstructed from competing for a GS-14 detail position; (7) she was not selected for a GS-14 supervisory position; and (8) she was removed from her position, effective August 16, 2020. ID at 10-11. Therefore, she found the appellant exhausted these matters. ID at 11. She further determined that each of the above actions were "personnel actions" within the meaning of 5 U.S.C. § 2302(a)(2). *Id.* We find no error with administrative judge's findings in this regard. The 7-day and 14-day suspensions, WIGI denial, denied training opportunity, denied detail opportunity, nonselection for the supervisory position, and removal decision are all personnel actions for the purposes of an IRA appeal. 5 U.S.C. § 2302(a)(2)(A)(i), (iii), (iv), (viii), (ix); *see Ruggieri v. Merit Systems Protection Board*, 454 F.3d 1323, 1327 (Fed. Cir. 2006) (finding that a nonselection is a personnel action for the purposes of an IRA appeal); *Fisher v. Environmental Protection Agency*, 108 M.S.P.R. 296, ¶ 6 (2008) (finding that a 4-day suspension constituted a personnel action within the Board's IRA jurisdiction); *Hoback v. Department of the Treasury*, 86 M.S.P.R. 425, ¶ 10 (2000) (agreeing with an administrative judge that denial of training may be a personnel action if the training was reasonably likely to lead to an appointment, promotion, performance evaluation, or other action described at 5 U.S.C. § 2302(a)(2)(A)).

¶12    Regarding the appellant's protected disclosures and activities, as previously noted, the administrative judge determined that the only potential disclosure identified in OSC's close-out letter concerned the appellant's disagreement with

her supervisor's decision to deny her June 2019 training request but that this disclosure was not protected because it did not concern any of the categories of wrongdoing identified in section 2302(b)(8). ID at 11-13. We agree. As previously noted, the Board's IRA jurisdiction covers reprisal for exercising "any appeal, complaint, or grievance right . . . with regard to remedying a violation of [5 U.S.C. § 2302(b)(8)]." 5 U.S.C. §§ 1221(a), 2302(b)(9)(A)(i); *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 7 (2013). However, the Board's jurisdiction does not cover claims arising under section 2302(b)(9)(A)(ii), which includes claims filed for reasons other than remedying a violation of section 2302(b)(8). 5 U.S.C. § 1221(a); *Young v. Merit Systems Protection Board*, 961 F.3d 1323, 1329 (Fed. Cir. 2020); *Mudd*, 120 M.S.P.R. 365, ¶ 7.

¶13    As the administrative judge observed, although the appellant did not provide a copy of the email, OSC's close-out letter describes the content of the email as "expressing disagreement with the decision to deny [her] a requested training [opportunity]," and the appellant's OSC complaint reflects the same. IAF, Tab 1 at 20, Tab 2 at 15. On review, the appellant reasserts that her complaints about the agency's failure to register her for a Foreign Service Institute training in June 2019 constituted a protected disclosure or activity, but she does not dispute the administrative judge's finding that her complaint did not disclose any of the categories of wrongdoing identified in 5 U.S.C. § 2302(b)(8). PFR File, Tab 2 at 7-8, 27, Tab 5 at 5, 11-12. Accordingly, we agree with the administrative judge's finding that the appellant failed to nonfrivolously allege that she made a protected disclosure or engaged in protected activity in connection with this complaint.

¶14    Regarding the EEO complaints the appellant identified in her submission to OSC, the administrative judge concluded that the Board and the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) have held that claims of retaliation for exercising rights under Title VII do not constitute protected

disclosures under 5 U.S.C. § 2302(b)(8), and so, the appellant failed to nonfrivolously allege that she made any protected disclosures in connection with her EEO complaints. ID at 13-15. We agree with this finding. As previously noted, the Board's jurisdiction over an IRA appeal does not cover claims arising under section 2302(b)(9)(A)(ii), including EEO complaints. *Edwards v. Department of Labor*, 2022 MSPB 9, ¶¶ 24-25. Accordingly, the administrative judge correctly concluded that the appellant failed to nonfrivolously allege that she made any protected disclosures in connection with her own EEO complaints.

¶15 Finally, the administrative judge analyzed the appellant's claim that a "Witness Affidavit" she submitted in connection with an EEO complaint filed by a coworker constituted a protected disclosure. ID at 15-18; IAF, Tab 9. As an initial matter, although the administrative judge identified the appellant's EEO witness affidavit as a "protected disclosure," she cited the pertinent provision as 5 U.S.C. § 2302(b)(9) in analyzing this claim, which addresses protected activities. ID at 15-18; *see* 5 U.S.C. § 2302(b)(8) (identifying categories of "disclosures" of information protected under that section), 5 U.S.C. § 2302(b)(9) (identifying types of activities protected under that section). The administrative judge implicitly found, and we agree, that the appellant exhausted this activity with OSC. ID at 11; IAF, Tab 7 at 15-18.

¶16 The administrative judge appears to have concluded that the appellant's claim qualified as an activity under section 2302(b)(9) but that she nevertheless failed to nonfrivolously allege that it was a contributing factor in the agency's decision to take any of the challenged personnel actions, based on either the knowledge/timing test or other nonknowledge/timing evidence. ID at 15-18.

¶17 However, the administrative judge did not identify which subsection of section 2302(b)(9) she applied in analyzing the appellant's claim that agency officials retaliated against her due to her submission of a witness affidavit in connection with a colleague's EEO complaint. Under 5 U.S.C. § 2302(b)(9)(B), protected activity includes "testifying for or otherwise lawfully assisting any

individual in the exercise" of any appeal, complaint, or grievance right.  5 U.S.C. § 2302(b)(9)(A)-(B); *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 10 (2015).  This provision is distinguishable from 5 U.S.C. § 2302(b)(9)(A)(i), which bars reprisal for an appellant's *personal* exercise of any appeal, complaint, or grievance right granted by law, rule, or regulation concerning an alleged violation of section 2302(b)(8).  Unlike section 2302(b)(9)(A)(i), the Board's IRA jurisdiction over protected activity under section 2302(b)(9)(B) need not concern remedying a violation of whistleblower reprisal under section 2302(b)(8).  *Alarid*, 122 M.S.P.R. 600, ¶ 12 n.5.  The Board also has held that an appellant's act of assisting another employee in the EEO process constitutes protected activity under 5 U.S.C. § 2302(b)(9)(B).  *Marable v. Department of the Army*, 52 M.S.P.R. 622, 629-30 (1992) (finding that the appellant's actions "supporting an EEO complaint filed by an applicant for a position with the agency" constituted protected activity under section 2302(b)(9)(B)), *superseded on other grounds by Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446 (2014); *see Viens-Koretko v. Department of Veterans Affairs*, 53 M.S.P.R. 160, 163 (1992) (concluding that testifying in favor of another employee at an EEO hearing constitutes activity protected under 5 U.S.C. § 2302(b)(9)(B)).  Consequently, we conclude that the appellant nonfrivolously alleged that her act of submitting an affidavit in support of his coworker's EEO complaint constituted protected activity under 5 U.S.C. § 2302(b)(9)(B).

¶18      Turning to the question of whether she nonfrivolously alleged that this protected activity was a contributing factor in the agency's decision to take any of the challenged personnel actions, the administrative judge determined that the appellant failed to nonfrivolously allege a contributing factor based on the knowledge/timing test or other nonknowledge/timing evidence.  ID at 15-18.  Specifically, the administrative judge made the following findings:  (1) it was unclear when the agency obstructed the appellant from competing for the GS-14 detail position and when she was not selected for the GS-14 Supervisor position,

so she could not meet the "timing" portion of the knowledge/timing test with respect to those purported personnel actions; (2) the amount of time that elapsed between when the appellant filed the witness affidavit in September 2018 and when the agency issued the 14-day suspension in October 2019, denied the appellant a WIGI in January 2020, denied her requested training in August 2020, and removed her in August 2020 were not within the range of time from which an inference of contributing factor could be drawn, and so the appellant failed to meet the "timing" portion of the knowledge/timing test; (3) although the appellant met the "timing" portion of the test regarding the 7-day suspension issued in April 2018 and the appellant's 2018 and 2019 performance appraisals, she nevertheless failed to nonfrivolously allege that any relevant agency officials had knowledge of the witness affidavit, and so she failed to meet the "knowledge" portion of the test; and (4) the other nonknowledge/timing evidence, including the nature of the appellant's statements in the witness affidavit, did not support a finding that the agency would have had a motive to retaliate against the appellant based on her protected activity.  ID at 16-18.  Consequently, the administrative judge determined that the appellant failed to nonfrivolously allege that her protected activity was a contributing factor in the agency's decision to take any of the challenged personnel actions and dismissed the appeal for lack of jurisdiction. ID at 18.

*The appellant satisfied the "timing" prong of the knowledge/timing test for several of her personnel actions.*

¶19        To satisfy the contributing factor criterion, an appellant need only raise a nonfrivolous allegation that the fact or content of her disclosure or protected activity was one factor that tended to affect the personnel action in any way.  *See Salerno*, 123 M.S.P.R. 230, ¶ 12.  One way to establish this criterion is the knowledge/timing test, under which an appellant may nonfrivolously allege that the disclosure or activity was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel

action knew of the disclosure or activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. 5 U.S.C. § 1221(e)(1); *see Salerno*, 123 M.S.P.R. 230, ¶ 13. The Board has held that a personnel action taken within approximately 1 to 2 years of an appellant's disclosures satisfies the timing portion of the knowledge/timing test. *See Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 19 (observing that a personnel action taken within approximately 1 to 2 years of the appellant's disclosure satisfies the timing factor of the knowledge/timing test); *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 21 (2015) (same).

¶20    Regarding the 14-day suspension the appellant received in October 2019, the WIGI denial in January 2020, and the denied training opportunity in August 2020, although the administrative judge determined that these personnel actions were not taken within the period of time to satisfy the "timing" portion of the knowledge/timing test, each of these personnel actions occurred less than 2 years after the appellant submitted the September 27, 2018 witness affidavit, and so, they would meet the "timing" portion of the test. IAF, Tab 21 at 52-53, 121-24; *Reid v. Department of Agriculture*, MSPB Docket No. DC-531D-20-0472-I-1, Initial Appeal File (0472 IAF), Tab 6 at 35-36; *see Skarada*, 2022 MSPB 17, ¶ 19; *Mastrullo*, 123 M.S.P.R. 110, ¶ 21. Regarding the appellant's 2018 and 2019 performance appraisals, although the administrative judge did not identify the date that she received those appraisals, the record reflects that they were issued on October 30, 2018, and October 21, 2019, respectively, well within the 2-year period to satisfy the timing prong of the test. IAF, Tab 21 at 134-35; *see Skarada*, 2022 MSPB 17, ¶ 19.

¶21    Regarding the appellant's nonselection for a GS-14 supervisory position, as the administrative judge observed, the appellant did not specifically identify when the agency failed to select her for this position in any of her pleadings. ID at 16. However, in her complaint to OSC the appellant states that she filed an EEO

complaint in May 2016 regarding her second-line supervisor's decision not to select her for the GS-14 Supervisory Program Manager position—more than 2 years before she filed the witness statement in support of her colleague's EEO complaint. IAF, Tab 7 at 12. Accordingly, the appellant's protected activity could not have been a contributing factor in the agency's decision to take this personnel action. *See El v. Department of Commerce*, 123 M.S.P.R. 76, ¶ 10 (2015) (explaining that because the subject personnel action predated the disclosure, the disclosure could not have contributed to the personnel action), *aff'd per curiam*, 663 F. App'x 921 (Fed. Cir. 2016); *Davis v. Department of Defense*, 106 M.S.P.R. 560, ¶ 12 (2007) (same), *aff'd*, 278 F. App'x 1009 (Fed. Cir. 2008).

¶22 The same is true of the appellant's 7-day suspension. Although the administrative judge determined that the appellant could meet the "timing" portion of the test with respect to this personnel action, the 7-day suspension was issued on April 30, 2018, nearly 5 months before the appellant submitted the witness affidavit on September 17, 2018, and so it too predated her protected activity. IAF, Tab 21 at 126-30.

¶23 With respect to the GS-14 detail position for which the appellant alleges she was obstructed from competing, although the administrative judge stated that the appellant failed to identify when she was prevented from competing for the detail, the record includes a series of emails the Senior Director of the appellant's division sent to the appellant on July 6, 2020, denying her request to apply for a detail position with TPGA. IAF, Tab 21 at 81-83. The appellant's complaint to OSC states that she was obstructed from applying for two detail positions but only identifies a detail with the agency's Plant Protection and Quarantine (PPQ) division by name. IAF, Tab 7 at 13, 17, 20-21. The agency FAD also identifies the appellant's claim that she was denied a detail with TPGA in June 2020. IAF, Tab 21 at 53-55. Accordingly, we conclude that the appellant satisfied the "timing" prong of the knowledge/timing test regarding her claim that the agency

obstructed her from competing for the GS-14 detail with TPGA in June or July 2020 in reprisal for her September 2018 EEO witness affidavit.

¶24    Regarding the GS-14 detail with APHIS PPQ, as the administrative judge correctly noted, aside from identifying this position in her OSC complaint, the appellant has not provided any information concerning when she was denied the opportunity to apply for this position.  ID at 16.  Nevertheless, the record contains an email the appellant sent to several agency employees on March 2, 2017, discussing what appears to be the APHIS PPQ detail.  IAF, Tab 17 at 5-6.  In the email, the appellant alleged that her second-level supervisor selected her first-level supervisor for the GS-14 detail position, on or around April 2014, in violation of the agency's policies regarding advertising details externally, and the appellant requested to be detailed to another GS-14 position. *Id.*  As with the GS-14 supervisory nonselection and the 7-day suspension, because the APHIS PPQ detail predates the appellant's purported protected activity, her protected activity could not have contributed to the agency's actions obstructing her from applying for the position.  *El*, 123 M.S.P.R. 76, ¶ 10; *Davis*, 106 M.S.P.R. 560, ¶ 12.  Accordingly, we conclude that the appellant failed to nonfrivolously allege contributing factor regarding this personnel action.

¶25    To summarize, we conclude that the appellant met the timing portion of the knowledge/timing test with regard to the September 17, 2018 EEO affidavit she submitted on behalf of another agency employee, in connection with the following alleged personnel actions:  (1) the 14-day suspension she received in October 2019; (2) the lowered performance ratings in October 2018 and October 2019; (3) the WIGI denial in January 2020; (4) the denied training opportunity in August 2020; and (5) her obstructed competition for a GS-14 detail opportunity with TPGA in June 2020.  However, the appellant's 7-day suspension in April 2018, her nonselection for a GS-14 supervisory position in May 2016, and the denial of her request to apply for the GS-14 detail with PPQ in March 2017 all predated the date of her protected activity, and so her activity

could not have contributed to the agency's decision to take those personnel actions, and the appellant failed to nonfrivolously allege contributing factor with regard to those personnel actions.

> *The appellant satisfied the "knowledge" prong of the knowledge/timing test for several of her personnel actions and therefore met her jurisdictional burden.*

¶26 Regarding the "knowledge" prong of the test, as previously noted, to satisfy the contributing factor criterion at the jurisdictional stage an appellant only need raise a nonfrivolous allegation that the fact of, or content of, the protected disclosure or activity was one factor that tended to affect the personnel action in any way. *Salerno*, 123 M.S.P.R. 230, ¶ 13. The Federal Circuit has found that, in the context of an IRA appeal, a nonfrivolous allegation is an allegation of "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1364, 1369 (Fed. Cir. 2020).

¶27 As the administrative judge noted, it is very difficult based on the appellant's pleadings to discern exactly which agency officials she alleges were aware of her purported disclosures and activities. ID at 16-17. Nevertheless, in her OSC complaint, the appellant does specifically identify the former Senior Director for her division (her former second-line supervisor) and the Deputy Administrator (her former third-line supervisor) as the subjects of the EEO complaint for which she submitted a witness statement on behalf of "another Plant Division employee" and states that these two officials "took the personnel actions" after she filed those EEO complaints. IAF, Tab 7 at 13, 18. Referring to the Deputy Director (her first-line supervisor) and the Director (her second-line supervisor) of her division, the appellant also alleges that she "reported on them in EEO complaints" and "provided information and affidavits to EEO investigators for my EEO complaints and for another Plant Division employee's EEO complaint about them." *Id.* at 15. Apparently referring to all of the above

agency officials and others, the appellant states that prior to her August 2020 removal "agency officials learned about my protected activity when I filed EEO and other complaints on their actions and provided information and affidavits to EEO investigators for my EEO complaints and the EEO complaints of another Plant Division employee." *Id.* at 17.

¶28 Although not a paragon of clarity, and although we have concerns about the amount of detail provided in these allegations, the burden at the jurisdictional stage to make a nonfrivolous allegation is a low one, and we must resolve any doubt or ambiguity in the appellant's allegations in favor of finding jurisdiction. *See Usharauli v. Department of Health & Human Services*, 116 M.S.P.R. 383, ¶ 19 (2011) (stating that any doubt or ambiguity as to whether the appellant made a nonfrivolous jurisdictional allegation should be resolved in favor of finding jurisdiction); *Jessup v. Department of Homeland Security*, 107 M.S.P.R. 1, ¶ 10 (2007) (observing that the appellant's burden of making a nonfrivolous allegation is low and requires only a minimally sufficient showing). Accordingly, we conclude that the appellant nonfrivolously alleged that relevant agency officials, including the Deputy Director (her first-line supervisor), the Director (her second-line supervisor), the Senior Director (her former second-line supervisor), the Deputy Administrator (her former third-line supervisor), and the former Director (her former first-line supervisor) were all aware of her protected activity under 5 U.S.C. § 2302(b)(9)(B) of filing a witness statement in support of a colleague's EEO complaint. IAF, Tab 7 at 19 (identifying all of the above officials as the subjects of her protected activity of filing the EEO witness affidavit and as the officials responsible for taking retaliatory personnel actions).

¶29 Regarding the agency officials responsible for each of the challenged personnel actions, the 14-day suspension was issued by the Director. IAF, Tab 21 at 121-23. The Deputy Director and the Director were the rating official and the reviewing official, respectively, for the appellant's 2018 and 2019 performance appraisals. IAF, Tab 21 at 134-35, Tab 7 at 17. The former Director denied the

appellant's WIGI in January 2020, and the Senior Director denied her request for reconsideration on that decision. IAF, Tab 7 at 16-17; 0472 IAF, Tab 6 at 35-36. Regarding the denied training opportunity in August 2020, the appellant alleged that the former Director denied the training opportunity when she refused to allow her to register for the training course. IAF, Tab 7 at 16-17. Finally, regarding the GS-14 detail with TPGA, the appellant alleged that the Senior Director was the individual who denied her the opportunity to apply for the detail, and the record includes copies of emails from the Senior Director denying the appellant's request to apply for the detail. IAF, Tab 7 at 16-17, Tab 21 at 81-83.

¶30    In sum, based on our review of the written record, we conclude that the appellant met her burden of making a nonfrivolous allegation that she was suspended for 14 days in October 2019, received lowered performance ratings in October 2018 and October 2019, was denied a WIGI in January 2020, was denied a training opportunity in August 2020, and was obstructed from competing for a GS-14 detail opportunity with TPGA in June 2020 in retaliation for her protected activity under section 2302(b)(9)(B) of "testifying for or otherwise lawfully assisting any individual in the exercise" of any appeal, complaint, or grievance right in connection with her submission of a witness statement in support of her colleague's EEO complaint. Accordingly, we vacate the initial decision and remand these claims for additional development of the record and for issuance of a decision on the merits as an IRA appeal.

The appeal of the agency FAD finding no discrimination in connection with the appellant's removal must be remanded for adjudication on the merits as a timely filed Board appeal of her mixed-case complaint under 5 U.S.C. § 7702.

¶31    Notably absent from our analysis has been any discussion of the removal action. In her initial appeal filing, the appellant claimed that her removal was the result of both EEO discrimination and whistleblower reprisal. IAF, Tab 1 at 3-5. By dismissing this appeal for lack of IRA jurisdiction, we find that the administrative judge erred in considering only the appellant's IRA appeal rights.

She also should have considered the appellant's mixed-case appeal rights. Under these circumstances, we must remand the appeal for adjudication on the merits regarding the appellant's Board appeal of her mixed-case complaint challenging her removal.

¶32    When an employee alleges that she was subjected to an otherwise appealable adverse action that can be the subject of a negotiated grievance procedure, and claims that action was based on EEO discrimination or reprisal, the employee may choose among the following: (1) the negotiated grievance procedure; (2) a Board appeal; or (3) a formal EEO complaint. 5 U.S.C. § 7121(d); *Galloway v. Social Security Administration*, 111 M.S.P.R. 78, ¶ 14 (2009). Whichever is filed first is deemed a binding election to proceed in that forum. *Carey v. Department of the Interior*, 103 M.S.P.R. 534, ¶ 11 (2006). If the employee elects to file a formal EEO complaint, she may file a Board appeal, as applicable here, within 30 days after receiving the agency's FAD. 5 U.S.C. § 7702(a)(2); *see* 5 C.F.R. §§ 1201.151(a)(1), 1201.154(b)(1). Such an appeal is known as a mixed case, and the Board will adjudicate both the underlying appealable action and the discrimination claims.[3] *Wilson v. Department of Veterans Affairs*, 2022 MSPB 7, ¶¶ 12, 14.

---

[3] Under 5 U.S.C. § 7121(g), an appellant who claims to have suffered reprisal for disclosures or activities protected under 5 U.S.C. § 2302(b)(8) or (b)(9)(A)(i), (B), (C), or (D), may, among other options, elect to file an OSC complaint potentially followed by an IRA appeal. 5 U.S.C. §§ 1214(a)(3), 1221(a), 7121(g)(2)-(3); 5 C.F.R. § 1209.2(d); *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 17 (2015), *overruled in part by Pridgen v. Office of Management & Budget*, 2022 MSPB 31, ¶¶ 23-24;. An employee is deemed to have elected whichever remedy she files first and that election precludes pursuing the matter in the other fora. *Sherman v. Department of Homeland Security*, 122 M.S.P.R. 644, ¶ 12 (2015). Section 7121(g) "applies with respect to a prohibited personnel practice other than" a claim of EEO discrimination or reprisal. 5 U.S.C. §§ 2302(b)(1), 7121(d), (g)(1). Assuming, without deciding, that an appellant's filing of an OSC complaint before filing an EEO complaint divests the Board of chapter 75 jurisdiction over a mixed-case appeal, it would not impact the outcome here. The appellant filed her EEO complaint first. IAF, Tab 1 at 4, Tab 7 at 29, Tab 19 at 4.

¶33     Here, the agency issued the removal decision on December 7, 2020, and it included notice of the appellant's right to challenge her removal through the EEO process.  IAF, Tab 1 at 16-18.  The record reflects that the appellant filed a formal EEO complaint challenging her removal on December 7, 2020, and the agency accepted her formal complaint on January 22, 2021.[4]  IAF, Tab 19 at 4-6.  The agency issued its FAD denying her EEO complaint on May 19, 2021, and the appellant timely filed the instant appeal less than 30 days later.  IAF, Tab 1, Tab 21 at 47-72.  In the narrative section of her appeal, she alleged that she had been subjected to discrimination, harassment, and reprisal by a number of agency officials and noted that she had filed "multiple complaints" regarding her allegations.  *Id.* at 5.  Accordingly, her appeal challenging the agency FAD was a timely filed Board appeal of her mixed-case complaint.

¶34     The administrative judge advised the appellant regarding how to establish jurisdiction over an IRA appeal but not how to establish jurisdiction over a chapter 75 appeal, nor did she provide the appellant with an opportunity to clarify the nature of her Board appeal after the FAD on her removal was submitted to the record.  IAF, Tab 4, Tab 21 at 47-72.  An appellant must receive explicit information on what is required to establish an appealable jurisdictional issue.  *Burgess v. Merit Systems Protection Board*, 758 F.2d 641, 643-44 (Fed. Cir. 1985).  At the time of her removal, she was a nonpreference eligible, permanent competitive service employee with over 1 year of service.  IAF, Tab 21 at 73, 76.  Therefore, the Board has jurisdiction over her mixed-case appeal.  5 U.S.C. §§ 7511(a)(1)(A), 7512(1), 7702(a)(1).  Accordingly, we must remand the portion of this appeal challenging the removal action for adjudication on the merits.  Although the appellant did not request a hearing, in light of the clarification of the nature of the Board's jurisdiction over her claims in this Remand Order, the

---

[4] Although she was covered by a collective bargaining agreement, the appellant did not file a grievance of her removal.  IAF, Tab 1 at 4, 11-12, Tab 20 at 18, Tab 21 at 285-86, 318-19.

administrative judge should afford the appellant the opportunity to request a hearing on remand. IAF, Tab 1 at 2. The administrative judge also should provide the appellant with the opportunity to raise potential affirmative defenses in connection with her Board appeal under chapter 75, including any claims of discrimination on the basis of protected EEO activity or reprisal for protected whistleblowing activity.[5]

---

[5] Because we are remanding this appeal for adjudication on the merits regarding the appellant's claims, the parties will have the opportunity to supplement the record and to engage in discovery. On remand, the administrative judge should issue a ruling on the appellant's motion to compel discovery. PFR File, Tab 2 at 5-7, 12-14, IAF, Tab 23; ID at 18 n.5.

Additionally, the agency has filed a motion to strike the appellant's reply to its response to the petition for review because it contained new allegations regarding additional purported protected disclosures the appellant alleges she made to agency management in 2013, to the Inspector General in 2017, to a U.S. Senator in 2017, and to OSC in 2018. PFR File, Tab 5 at 4 26, Tab 6. As the agency correctly notes, under the Board's regulations, a reply must be "limited to the factual and legal issues raised by another party in the response to the petition for review." 5 C.F.R. § 1201.114(a)(4). Accordingly, we have not considered the appellant's arguments in her reply to the extent they fail to respond to the agency's arguments. *See Boston v. Department of the Army*, 122 M.S.P.R. 577, ¶ 5 n.3 (2015) (declining to consider new arguments that were first raised in a reply brief); *Special Counsel v. Kehoe*, 46 M.S.P.R. 112, 117-18 (1990) (observing the well-established Federal appellate rule that a party cannot raise new issues in a reply). Nevertheless, because we are remanding the appeal for adjudication of the appellant's removal under chapter 75, she will be provided with the opportunity on remand to raise any new potential affirmative defenses.

**ORDER**

For the reasons discussed above, we remand this case to the Washington Regional Office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:        /s/ for
_____
                      Jennifer Everling
                      Acting Clerk of the Board
Washington, D.C.