**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

COLLIN BAILEY,
           Appellant,

      v.

DEPARTMENT OF VETERANS
   AFFAIRS,
           Agency.

DOCKET NUMBER
AT-0714-17-0722-I-1

DATE:  January 10, 2024


# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Megan Zeller</u>, Esquire, and <u>Tyler Sroufe</u>, Esquire, Dallas, Texas, for
   the appellant.

<u>Karen Rodgers</u> and <u>W. Robert Boulware</u>, Montgomery, Alabama, for
   the agency.


**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member


**REMAND ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which sustained his removal.  For the reasons discussed below, we GRANT the petition for review, VACATE the initial decision, REVERSE the appellant's removal, and

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

REMAND the appeal to the Atlanta Regional Office for further adjudication of the appellant's affirmative defenses in accordance with this Remand Order.

## BACKGROUND

¶2 The agency employed the appellant as a GS-12 Supervisory Diagnostic Radiologic Technologist at the Veterans Health Administration in Montgomery, Alabama. Initial Appeal File (IAF), Tab 6 at 11. Effective August 18, 2017, the agency removed him for the charges of conduct unbecoming and improper conduct. *Id.* at 9-11, 23-24. The appellant filed a Board appeal and raised affirmative defenses of race discrimination, sex discrimination, and retaliation for engaging in protected equal employment opportunity (EEO) activity. IAF, Tabs 1, 16.

¶3 After the appellant withdrew his request for a hearing, the administrative judge issued an initial decision based on the written record. IAF, Tab 18 at 1, Tab 24, Initial Decision (ID). He found that the agency proved its charge of conduct unbecoming a Federal employee. ID at 4-5. He then found it unnecessary to review whether the appellant engaged in the specified improper conduct. ID at 5. He further found that the appellant failed to meet his burden of showing that his removal was motivated by race discrimination, sex discrimination, or retaliation based on prior EEO activity. ID at 5-7. He therefore affirmed the removal action. ID at 7.

¶4 The appellant has filed a petition for review, and the agency has filed a response in opposition. Petition for Review (PFR) File, Tabs 3, 5.

## DISCUSSION OF ARGUMENTS ON REVIEW

The agency's charges are not sustained and the appellant's removal must be reversed.

¶5 The administrative judge sustained the conduct unbecoming charge and found that charge sufficient to sustain the appellant's removal. ID at 4-5. Therefore, he did not decide whether the agency proved its improper conduct

charge. ID at 5. On review, the appellant disagrees that the agency proved the conduct unbecoming charge. PFR File, Tab 3 at 13-16. He also disputes the improper conduct charge. *Id.* at 17-18.

¶6      The basis of the agency's conduct unbecoming charge was the appellant's admitted "personal and consensual" relationship with a subordinate between 2014 and 2016. IAF, Tab 6 at 9, 16-17, 20-21, Tab 20 at 28-29. The alleged misconduct included sending the subordinate at least one sexually explicit text message. IAF, Tab 6 at 9, 46-49, Tab 20 at 28-29. The appellant submitted a sworn statement below attesting that the "friendship [with his subordinate] ended in 2015." IAF Tab 20 at 29, 42. The appellant also admitted that, as the agency alleged in support of its improper conduct charge, in November 2014, he loaned the same subordinate $1,500. IAF, Tab 6 at 9, 17-18, Tab 20 at 30.

¶7      The agency removed the appellant under the Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017 (VA Accountability Act), Pub. L. No. 115-41, § 202(a), 131 Stat. 862, 869-73 (codified as amended at 38 U.S.C. § 714). After the administrative judge issued his decision, the U.S. Court of Appeals for the Federal Circuit determined that the agency cannot remove an employee under the VA Accountability Act for incidents that took place before the Act was signed into law on June 23, 2017. *Sayers v. Department of Veterans Affairs*, 954 F.3d 1370, 1374, 1380-82 (Fed. Cir. 2020). The court reasoned that doing so has an "impermissible retroactive effect." *Id.* at 1380-82. When the cited conduct in support of an action taken under the VA Accountability predates June 23, 2017, the charge cannot be sustained and the agency's action must be reversed. *Wilson v. Department of Veterans Affairs*, 2022 MSPB 7, ¶¶ 26-29, 33. Here, all of the cited misconduct occurred prior to June 2017. Therefore, the agency's charge is not sustained and the removal is reversed.

¶8      Because we reverse the charges on the basis that the agency improperly relied on 38 U.S.C. § 714 in taking its action, we need not consider the

appellant's arguments regarding the merits of the charges. PFR File, Tab 3 at 13-18. For the same reason, we do not reach the appellant's arguments on review that the alleged misconduct did not have a nexus with the efficiency of the service and that removal was too severe a penalty. *Id.* at 18-21.

We remand this appeal for further adjudication of the appellant's affirmative defenses of race and sex discrimination and EEO retaliation.

¶9      The Board will not reverse an administrative judge's rulings on discovery matters absent an abuse of discretion. *Wagner v. Environmental Protection Agency*, 54 M.S.P.R. 447, 452 (1992), *aff'd*, 996 F.2d 1236 (Fed. Cir. 1993) (Table). Here, the appellant timely initiated discovery on September 27, 2017. IAF, Tab 12 at 12-20. The agency responded to the appellant's discovery requests on October 17, 2017. *Id.* at 21-23. On October 25, 2017, the appellant emailed the agency stating that its responses were deficient in that they lacked the requested comparator evidence and advising the agency that his deadline to file a motion to compel was October 27, 2017. *Id.* at 24. On October 26, 2017, the agency responded, notifying the appellant that it had requested a copy of his personnel file and, on October 27, 2017, the agency notified the appellant that it had overnighted the personnel file. *Id.* at 24, 26. Neither email response from the agency addressed the requested comparator evidence. As a result, the appellant filed a motion to compel discovery responses concerning the requested comparator evidence. *Id.* at 4-10. The motion included a description of the appellant's attempt to confer with the agency prior to its filing, and the appellant's attorney declared that the facts in the pleading were true and correct under penalty of perjury. *Id.* at 3-5. The agency did not file a response to the motion to compel.

¶10     The administrative judge subsequently issued an order denying the motion to compel. IAF, Tab 13. He found the motion deficient because it failed to demonstrate that the parties discussed the anticipated motion either in person or by telephone prior to filing. *Id.* at 1-2. In so finding, he stated that, at best, the

five parties only exchanged email messages concerning the discovery dispute. *Id.* at 2.

¶11   In the initial decision, the administrative judge found that the appellant failed to meet his burden of showing that his removal was motivated by race discrimination, sex discrimination, or retaliation based on prior EEO activity. ID at 5-7. Significantly, he found that the appellant failed to present any evidence of comparator employees who engaged in similar conduct but were treated differently. ID at 6-7. On review, the appellant claims that the administrative judge abused his discretion, and prevented him from proving his affirmative defenses, when he denied his motion to compel the agency's responses to his discovery requests concerning comparator evidence relating to his discrimination and retaliation claims. PFR File, Tab 3 at 11-13. We agree. In this situation, we find the email exchange sufficient to show that the parties discussed or attempted to discuss the discovery dispute and a potential motion to compel prior to its filing as required by regulation. *See* 5 C.F.R. § 1201.73(c)(1)(iii).

¶12   However, the Board will not find reversible error in an administrative judge's discovery rulings absent an abuse of discretion that prejudiced the appellant's substantive rights. *White v. Government Printing Office*, 108 M.S.P.R. 355, ¶ 9 (2008). The appellant's initial discovery requests and subsequent motion to compel sought discovery of comparator evidence for the purposes of proving his affirmative defenses of race discrimination, sex discrimination, and retaliation based on prior EEO activity. IAF, Tab 12. An appellant may prove a claim of discrimination based on race or sex by proving that prohibited discrimination at least "play[ed] any part in the way a decision [was] made." *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 20-21 (quoting *Babb v. Wilkie*, 140 S. Ct. 1168, 1173-74 (2020)). Claims of retaliation for opposing discrimination in violation of Title VII are analyzed under the same framework used for Title VII discrimination claims. *Id.*, ¶ 30 (citation omitted). One way an appellant may establish a discrimination claim is

through comparator evidence, or evidence relating to the treatment of similarly situated employees. *Id.*, ¶ 27. The appellant, as the party bearing the burden of proof on his affirmative defenses, is entitled to obtain such evidence to support his claims. *See White*, 108 M.S.P.R. 355, ¶ 9. As the appellant's motion to compel was reasonably calculated to lead to the discovery of admissible evidence, he was prejudiced in his ability to present his affirmative defenses. *See* 5 C.F.R. § 1201.72(a) (providing that during the discovery process a party may seek information that appears reasonably calculated to lead to the discovery of admissible evidence). Therefore, the administrative judge abused his discretion and committed reversible error by denying the appellant's motion to compel. *See White*, 108 M.S.P.R. 355, ¶¶ 8-10 (concluding that an administrative judge's error in denying a motion to compel comparator information related to a race discrimination claim prejudiced an appellant's substantive rights and remanding the appeal on this basis).

¶13 On remand, the administrative judge must grant the appellant's motion to compel in whole or in part, as appropriate, and reopen discovery to allow the appellant to complete discovery related to relevant comparator evidence. After the completion of discovery, the administrative judge shall provide the parties with an opportunity to submit supplemental evidence and argument concerning the appellant's affirmative defenses into the record. The administrative judge also shall afford the appellant a hearing, if requested.[2] *See, e.g., White*, 108 M.S.P.R. 355, ¶ 10; *Mc Grath v. Department of the Army*, 83 M.S.P.R. 48, ¶ 20 (1999).

---

[2] On review, the appellant claims that the administrative judge failed to review his Trial by Submission, including affidavits and statements that attest to the fact that race was a motivating factor in his removal. PFR File, Tab 3 at 10-13, 22-25. On remand, the administrative judge shall consider this evidence as well as any rebuttal to this evidence submitted by the agency on remand.

**ORDER**

¶14  Accordingly, the initial decision is vacated, the appellant's removal is reversed, and the case is remanded for further adjudication.

¶15  Notwithstanding the remand proceedings on the appellant's discrimination and retaliation claims, we ORDER the agency to cancel the appellant's removal and to restore the appellant effective August 18, 2017. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶16  We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶17  We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶18  No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶19     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

*Jennifer Everling*

FOR THE BOARD:                    _____
                                  Jennifer Everling
                                  Acting Clerk of the Board
Washington, D.C.



| | |
|---|---|
|  | **DEFENSE FINANCE AND ACCOUNTING SERVICE**<br>**Civilian Pay Operations** |

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g., TSP, FEHB, etc.).

☐ 7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63).
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion.  Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.